******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THOMAS PRIORE *v.* STEPHANIE HAIG
## (AC 41748)

Alvord, Prescott and Pellegrino, Js.

*Syllabus*

The plaintiff sought to recover damages for defamation in connection with statements made by the defendant about the plaintiff at a public hearing before the Greenwich Planning and Zoning Commission on the plaintiff's application for a special permit to construct a new residence and new sewer line on his property. At the hearing, the defendant addressed the commission to share her concerns regarding the plaintiff's application. In addition to her concern that the proposed sewer line would have an impact on the health of trees, she stated that the plaintiff had not been trustworthy, had a serious criminal past, and had paid more than $40,000,000 in fines to the Securities and Exchange Commission. The press was in attendance and published parts of the defendant's statement. The defendant filed a motion to dismiss the plaintiff's action claiming, inter alia, that the trial court lacked subject matter jurisdiction because her statements were entitled to absolute litigation immunity, which the court granted. The plaintiff filed a motion to reargue, claiming that the trial court incorrectly concluded that the hearing was quasi-judicial in nature, improperly considered whether the defendant's statements were pertinent rather than relevant to the subject matter of the hearing, applied the wrong standard to a motion to dismiss, and failed to hold an evidentiary hearing to resolve disputed jurisdictional facts. The court denied the motion and the plaintiff appealed to this court claiming, inter alia, that the trial court incorrectly granted the motion to dismiss and denied his motion to reargue. *Held*:

1. The trial court properly decided the defendant's motion to dismiss on the basis of the complaint, the transcript of the hearing, and the defendant's affidavit, and did not abuse its discretion in declining to conduct an evidentiary hearing or in denying the plaintiff's motion to reargue; the plaintiff failed to present evidence to establish a dispute as to a material jurisdictional fact and did not request an evidentiary hearing until after the court decided the defendant's motion to dismiss.

2. The trial court correctly determined that the defendant's statements were entitled to absolute litigation immunity: the planning and zoning commission hearing was quasi-judicial in nature because the commission exercised discretion in deciding whether to approve the plaintiff's special permit application, it engaged in fact-finding, it had the ability to approve, deny, or table the plaintiff's application for further proceedings, its decision whether to grant or deny the plaintiff's application had the power to affect the property rights of private persons, and it heard the testimony of several witnesses; moreover, public policy interests in encouraging citizen participation in the deliberations and decisions of their local governments supported a finding that the hearing was quasi-judicial in nature; furthermore, the defendant's statements concerned the credibility of the plaintiff, which the plaintiff put into issue by submitting a special permit application that contained representations on which the zoning and planning commission would rely in reviewing that application and, therefore, the defendant's statements were pertinent to the subject matter of the proceeding.

Argued October 22, 2019—officially released March 31, 2020

*Procedural History*

Action to recover damages for defamation, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Povodator, J.*, granted the defendant's motion to dismiss; thereafter, the court, *Povodator, J.*, denied the plaintiff's motion to reargue and rendered judgment for the defendant, from which the plaintiff appealed to this court.

*Affirmed.*

*Eric D. Grayson,* for the appellant (plaintiff).

*Richard W. Bowerman,* with whom, on the brief, was *Jacob Pylman,* for the appellee (defendant).

*Opinion*

PRESCOTT, J. This is a defamation action brought by the plaintiff, Thomas Priore, against the defendant, Stephanie Haig, seeking to recover damages for injuries that he claims to have sustained as a result of allegedly defamatory statements made by the defendant during a hearing before the Greenwich Planning and Zoning Commission (commission). The plaintiff appeals from the judgment of the trial court granting the defendant's motion to dismiss on the ground that the court lacked subject matter jurisdiction because the defendant's statements were entitled to absolute litigation immunity.

On appeal, the plaintiff claims that the trial court (1) improperly dismissed the action and denied his motion to reargue because the trial court failed to hold an evidentiary hearing necessary to resolve jurisdictional facts in dispute, and (2) incorrectly determined that the defendant's statements were entitled to absolute litigation immunity because (a) the proceeding of the commission, at which the commission considered the plaintiff's special permit application and the materials submitted in support thereof, was not quasi-judicial in nature, and (b) the statements concerning the plaintiff that the defendant made to the commission were not "pertinent" to the commission's proceeding. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts in the record before the trial court, derived from the complaint, the transcript of the commission's hearing, and the defendant's affidavit, viewed in the light most favorable to the plaintiff, and procedural history are relevant to our review. The plaintiff is the chairman of a company that is one of the nation's leading credit card payment processors. The industry in which the plaintiff works is "heavily reputation dependent . . . ." In January, 2015, the plaintiff, through a limited liability company, purchased a property located at 15 Deer Park Meadow Road in Greenwich (property). The property is part of a private subdivision known as the Deer Park Association (association), which consists of fifteen to seventeen lots. When the plaintiff bid on the property, it was understood that he would demolish the dwelling on the property and construct an entirely new home. The plaintiff also agreed that he would have a new sewer line installed on his property. Through an easement that the plaintiff agreed to grant, the sewer line would be accessible to others in the association for access and repairs.

As part of the process for obtaining the commission's approval to construct a new residence and to place a sewer line on his property, the plaintiff was required to and, indeed, did submit an application for a special

permit. This application, as well as the final site plan submitted in support thereof, were the subject of discussion and deliberation at the commission's public hearing on January 12, 2016 (hearing). The hearing was slated to be the final hearing concerning the approval of the plaintiff's application. The record does not indicate whether the plaintiff attended the hearing.

Anthony D'Andrea, the plaintiff's engineer, was the first person to address the commission concerning the plaintiff's application. He discussed various aspects of the plan to install the sewer line, including drainage and the way in which the installation of the sewer line might affect some of the existing trees on the property. D'Andrea stated that trees had been "removed during the demolition of the house" and that he believed a planting plan would be submitted "that [would] include at least twenty trees." In sum, D'Andrea stated that the sewer line was being placed in a way that would protect the trees in the area and that the goal was to maximize the number of trees that could be preserved.

After D'Andrea spoke, members of the public were invited to address the commission. The first speaker was the president of the association (president), who alerted the commission to subsequent speakers that would address the commission about trees that were important to members of the association. According to the president, the trees were important because they "provide[d] privacy [and were] part of the character" of the neighborhood.

Following the president's remarks, Michael Finkbeiner, a surveyor and consulting professional forester retained by an association member, addressed the commission. Finkbeiner noted that an "existing conditions plan" was missing from the plaintiff's submission to the commission. Finkbeiner stated that this document had not been included in the submission because it would have disclosed that the plaintiff had clear-cut the property of certain trees. He implored the commission to consider "additional regulations [to protect] sites in advance of special permit applications" to prevent "applicants [from] com[ing] in for a special permit after they have clear-cut the site." Indeed, Finkbeiner stated that, as a result of the plaintiff's representations, the commission may have "been deceived into thinking [that the trees shown in the topographic survey are] existing trees, but they are no more."

After Finkbeiner spoke, the defendant addressed the commission. The defendant stated that she was concerned that the plaintiff's proposed sewer line would impact the health of the trees that she claimed to "co-own" with the plaintiff. She also stated that the plaintiff had been "very disrespectful of the neighbors" in the way in which he managed alterations to his property. She also said that the plaintiff has "a criminal past."[1] Indeed, she stated that the plaintiff had "a serious crimi-

nal past" and that he had "paid over $40,000,000 in fines to the [Securities and Exchange Commission (SEC)]." These remarks prompted a commission staff member to interject that these comments were "not of relevance to the planning and zoning commission." The defendant also added that she was "very concerned going forward that there is real good oversight from Greenwich on how [the plaintiff] deals with this property because he has not been trustworthy in the first dealings with us and there are many more dealings to go." She then added, "as a citizen and as a next-door neighbor I want to have a nice development with [the plaintiff], but [he hasn't] really been . . . playing ball nicely."

D'Andrea subsequently returned to the microphone to address the issue of the trees. He admitted that a drawing of the property submitted by the plaintiff misrepresented the current presence or absence of trees on the property. He claimed, however, that the trees that the plaintiff had since removed were present on the property at the time the plaintiff submitted the application. Moreover, he stated that, although the plaintiff had been removing trees, the plaintiff did not consult with him about doing so.

Indeed, one member of the commission stated that the drawing that the plaintiff had submitted was "incomplete" because it did not depict certain trees. The chairman of the commission asked D'Andrea to work to reconcile the drawing in light of the information that Finkbeiner had submitted to the commission, to which D'Andrea agreed. D'Andrea also agreed that he was only a "representative" of the plaintiff, and could not control the plaintiff's decision to cut trees.

The hearing adjourned with the commission tabling the decision on whether to approve the application until the plaintiff or his representatives provided it with the clarifications and information that it had requested. At a later time, the commission ultimately approved the plaintiff's application "with very little change or requirements from the town . . . ."

The plaintiff commenced this action on October 12, 2016. In his five count second revised complaint sounding in libel per se, libel per quod, slander per se, slander per quod, and defamation, the plaintiff alleged that he had suffered "reputational damage . . . in his standing in the community and in his profession" because the defendant falsely accused him of criminal misconduct and of being untrustworthy. The defendant filed an answer and six special defenses. In her third special defense, the defendant claimed that she was immune from suit for defamation, libel, and slander because she made these statements in the course of a quasi-judicial proceeding. The plaintiff responded by moving to strike this defense as well as the defendant's first and second special defenses.

The defendant filed an objection to the plaintiff's motion to strike and, in the same pleading, moved to dismiss the plaintiff's action, claiming, inter alia, that the court lacked subject matter jurisdiction over the plaintiff's action because the statements that she made during the commission's hearing were entitled to absolute litigation immunity. The defendant attached to her motion to dismiss the transcript of the hearing of the commission at which she made the alleged defamatory remarks about the plaintiff and a sworn affidavit of the defendant's attorney averring that the transcript was a true and accurate copy.

In response, the plaintiff filed an objection to the defendant's motion to dismiss. The sole exhibit that the plaintiff attached to his objection was the same transcript of the commission hearing that the defendant had attached to her motion to dismiss. Importantly, in neither his objection to the defendant's motion to dismiss nor at oral argument on the motion did the plaintiff assert that the court was required to conduct an evidentiary hearing to resolve disputed jurisdictional facts.

On January 23, 2018, the trial court granted the defendant's motion to dismiss and issued a comprehensive and well reasoned memorandum of decision. In that decision, the trial court concluded, on the basis of the plaintiff's complaint, the defendant's affidavit, and the transcript of the hearing submitted by both parties, that it did not have subject matter jurisdiction over the plaintiff's claims because the statements that the defendant made about the plaintiff at the commission's hearing were entitled to absolute litigation immunity. In reaching this conclusion, the court determined that the commission's hearing, in which it considered whether to approve the plaintiff's special permit application, constituted a proceeding that was quasi-judicial in nature. The court also determined that the defendant's statements were pertinent to the subject matter of the proceeding because they concerned the plaintiff's credibility, which the commission had to weigh when reviewing the representations he and his agents made to it in order to decide whether to approve his application.

The plaintiff then filed a motion to reargue and for reconsideration (motion to reargue) in accordance with Practice Book §§ 11-11 and 11-12. In this motion, the plaintiff argued that the court incorrectly concluded that the commission's hearing was quasi-judicial in nature. He also argued that the court improperly considered whether the defendant's statements were *pertinent* to the subject matter of the proceeding. The plaintiff asserted that the court should have considered whether the statements were *relevant* and, ultimately, should have concluded that they were not. Moreover, the plaintiff argued that the court applied the wrong standard for deciding a motion to dismiss. The plaintiff also asserted, for the first time, that the court was

required to conduct an evidentiary hearing to resolve jurisdictional facts that were in dispute.[2] The defendant then filed an objection to the plaintiff's motion to reargue, to which the plaintiff filed a reply.

On May 24, 2018, the court denied the plaintiff's motion to reargue and issued a memorandum of decision setting forth its reasoning. In its memorandum of decision, the court reiterated its conclusion that the commission's hearing on the plaintiff's application was quasi-judicial in nature and that the defendant's statements about the plaintiff were pertinent to the subject matter of that proceeding. With respect to the plaintiff's claim that he was entitled to an evidentiary hearing, the court stated that it properly based its decision to grant the motion to dismiss on the complaint and the transcript of the commission's hearing. The court also stated that there were no jurisdictional facts in dispute that necessitated an evidentiary hearing. This appeal followed.

I

The plaintiff first claims that the trial court incorrectly granted the defendant's motion to dismiss and denied his motion to reargue because he was entitled to an evidentiary hearing to resolve disputed jurisdictional facts; namely, (1) "the exact nature of the special permit and site plan application before [the commission]," (2) whether "trees had been 'clear cut' [by the plaintiff] without [the commission's] knowledge or as otherwise indicated in the site plan," and (3) whether the "defendant's comments were . . . relevant or pertinent to [any] matter raised in the special permit application." The plaintiff argues that, because these jurisdictional facts were in dispute and no evidentiary hearing was held, the court improperly concluded that the proceeding of the commission was quasi-judicial in nature and that the defendant's statements about the plaintiff were pertinent to the commission's proceeding. We disagree.

We first set forth the well settled principles governing a trial court's resolution of a pretrial motion to dismiss for lack of subject matter jurisdiction and our corresponding standard review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . .

"Trial courts addressing motions to dismiss . . .

pursuant to [Practice Book] § 10–30 (a) (1) may encounter different situations, depending on the status of the record in the case. . . . [L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed. . . .

"[I]f the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; emphasis omitted; footnotes omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 650–54, 974 A.2d 669 (2009).

To the extent that the plaintiff also seeks review of the court's denial of his motion to reargue, we review a court's decision on this type of motion for an abuse of discretion. See, e.g., *Weiss* v. *Smulders*, 313 Conn. 227, 261, 96 A.3d 1175 (2014); *C.R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 100–102 and n.39, 919 A.2d 1002 (2007). Similarly, we review a trial court's decision to deny a party's request for an evidentiary hearing under the abuse of discretion standard. See

*Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 102, 952 A.2d 1 (2008); see also *St. Denis-Lima* v. *St. Denis*, 190 Conn. App. 296, 303, 212 A.3d 242 ("[w]e review the denial of a request for an evidentiary hearing under the abuse of discretion standard"), cert. denied, 333 Conn. 910, 215 A.3d 734 (2019). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *Weiss* v. *Smulders*, supra, 261.

This court has stated that "[a] court is required to hold an evidentiary hearing before adjudicating a motion to dismiss only if there is a genuine dispute as to some [material] jurisdictional fact." *Property Asset Management, Inc.* v. *Lazarte*, 163 Conn. App. 737, 749, 138 A.3d 290 (2016). "[I]t is [however] the *plaintiff's burden* both to *request* an evidentiary hearing *and* to *present evidence* that establishes disputed factual allegations in support of an evidentiary hearing . . . ." (Emphasis added; internal quotation marks omitted.) *St. Denis-Lima* v. *St. Denis*, supra, 190 Conn. App. 306; see also *Walshon* v. *Ballon Stoll Bader & Nadler, P.C.*, 121 Conn. App. 366, 371, 996 A.2d 1195 (2010). "[If] the plaintiff fail[s] to do either, [then] the court [may] properly [decide] the motion on the basis of the pleadings and affidavits." (Internal quotation marks omitted.) *St. Denis-Lima* v. *St. Denis*, supra, 306; see also *Walshon* v. *Ballon Stoll Bader & Nadler, P.C.*, supra, 371. For the reasons that follow, we conclude that the plaintiff failed to satisfy his obligation to request an evidentiary hearing and his burden to present evidence demonstrating that a material jurisdictional fact was in dispute. Accordingly, the trial court appropriately decided the defendant's motion to dismiss on the basis of the complaint, the transcript of the commission's hearing, and the affidavit submitted by the defendant. It also did not abuse its discretion by declining to conduct an evidentiary hearing and denying the plaintiff's motion to reargue.

The plaintiff did not request that the court conduct an evidentiary hearing until he filed his motion to reargue, which was after the court had decided the motion to dismiss. This court has held that a motion to reargue is generally an inappropriate vehicle for a party to request that a court conduct an evidentiary hearing when that party had a prior opportunity to present evidence. See *Gibbs* v. *Spinner*, 103 Conn. App. 502, 507, 930 A.2d 53 (2007); see also *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001) (motion to reargue should not be used to correct deficiencies in prior motion).

The plaintiff in the present case had ample opportunity to offer evidence to the court to satisfy his burden of establishing a genuine dispute as to a material juris-

dictional fact. In response to the defendant's motion to dismiss, the plaintiff could have attached counteraffidavits or other evidence to his objection to the defendant's motion. See *Conboy* v. *State*, supra, 292 Conn. 652; see also Practice Book § 10-31 (a). Indeed, the plaintiff clearly was aware of his ability to proffer evidence to the court before it decided the defendant's motion to dismiss because he attached the transcript of the commission's hearing to his objection to the defendant's motion. Furthermore, the plaintiff could have requested an evidentiary hearing before the court decided the defendant's motion to dismiss by filing a request with the court. Practice Book § 10-31 (b). Indeed, it was the plaintiff's burden to request an evidentiary hearing. See *St. Denis-Lima* v. *St. Denis*, supra, 190 Conn. App. 306; see also *Walshon* v. *Ballon Stoll Bader & Nadler, P.C.*, supra, 121 Conn. App. 371. The plaintiff, however, did not request an evidentiary hearing until *after* the court had ruled on the motion to dismiss.[3] Because this court has determined that a party may not use a motion to reargue to obtain an evidentiary hearing when he or she had an opportunity to proffer evidence before the court decided the underlying motion, we conclude that the plaintiff failed to meet his burden of requesting an evidentiary hearing.[4]

We are also unpersuaded that any jurisdictional facts were in dispute when the court decided the defendant's motion to dismiss. The plaintiff, however, contends that three jurisdictional facts were in dispute. The first jurisdictional fact that he argues was in dispute concerned the nature of the special permit application and site plan before the commission. This fact, however, was not in dispute when the court decided the defendant's motion to dismiss. The complaint states that the hearing at which the defendant made the statements about the plaintiff was a "final meeting . . . held [by] the Greenwich Planning and Zoning Commission to approve [the] plaintiff's application for a new sewer permit . . . ." In addition, the transcript of the hearing states that the commission was considering the "final site plan and special permit [for the plaintiff's property]." Thus, it is undisputed from the complaint and the transcript that the commission was considering a final site plan and special permit application for construction on the plaintiff's property, which included installing a sewer line on the property. To the extent that there was any dispute about the nature of the application, the plaintiff failed to proffer any evidence to the trial court that tended to demonstrate that the nature of the commission's proceeding was different than as described by him in his complaint.

The second jurisdictional fact—whether the plaintiff had cut down trees without the commission's knowledge or as otherwise indicated in the site plan—was not material to the court's decision as to whether the defendant was absolutely immune from suit for defama-

tion. The trial court determined that the defendant's statements were pertinent to the commission's proceeding because they concerned the plaintiff's credibility. The plaintiff's credibility was put at issue before his clear-cutting of trees was raised to the commission. Indeed, the plaintiff's credibility was put at issue when he submitted a special permit application and made representations in support of the application on which the commission would rely to approve or deny it. Thus, whether the plaintiff did in fact cut down the trees was not a material jurisdictional fact.

Finally, the third jurisdictional "fact"—whether the "[d]efendant's comments were . . . relevant or pertinent to [any] matter raised in the special permit application"—is not a question of fact. Rather, the court's determination of whether a statement is pertinent to the subject matter of a proceeding is a *legal* conclusion. See *Gallo* v. *Barile*, 284 Conn. 459, 467, 935 A.2d 103 (2007) ("[i]n making [the] determination [of whether a particular statement is made in the course of a judicial proceeding], *the court must decide as a matter of law* whether the allegedly [false and malicious] statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding, so as to qualify for the [immunity]" (emphasis added; internal quotation marks omitted)); see also 1 D. Pope, Connecticut Actions and Remedies: Tort Law (1993) § 10:12 p. 10-31 (whether statement is relevant to proceeding is question of law for court to decide). To the extent that the plaintiff's argument addresses the content of the defendant's statements, both the defendant *and* the plaintiff proffered a copy of the transcript of the commission's hearing to the court for its consideration before it decided the motion to dismiss. The transcript contained what the defendant said verbatim during the hearing, and the plaintiff offered no evidence to the court disputing the accuracy of the transcript. Because neither the complaint, the transcript of the commission's hearing, nor the defendant's affidavit established a genuine dispute regarding a material jurisdictional fact, we conclude that the trial court properly granted the motion to dismiss and did not abuse its discretion by denying the plaintiff's subsequent request for an evidentiary hearing and by denying his motion to reargue.[5]

## II

The plaintiff's second claim is that the trial court incorrectly determined that it lacked subject matter jurisdiction over his defamation claim because the defendant's statements about the plaintiff that she made at the commission's hearing were entitled to absolute litigation immunity.[6] In support of this claim, the plaintiff argues that the trial court incorrectly concluded that (1) the proceeding of the commission, at which it considered the his special permit application and the

materials submitted in support thereof, was quasi-judicial in nature and (2) the statements about him that the defendant made to the commission were pertinent to the commission's proceeding. We disagree with the plaintiff.

Before addressing the plaintiff's two arguments pertaining to this claim, we begin by considering the well settled principles and policy interests concerning absolute litigation immunity.[7] In sum, absolute litigation immunity prevents a person from being sued for defamation for a statement made in the course of a judicial or quasi-judicial proceeding so long as the statement is pertinent to the subject matter of the proceeding. See, e.g., *Kelley* v. *Bonney*, 221 Conn. 549, 565–66, 606 A.2d 693 (1992). "Once it is determined that a proceeding is [judicial or] quasi-judicial in nature, the absolute [immunity] that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Internal quotation marks omitted.) *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 84, 856 A.2d 372 (2004). Moreover, "[t]he effect of an absolute [immunity] in a defamation action . . . is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 788, 865 A.2d 1163 (2005).

Our Supreme Court has articulated the public policy reasons supporting absolute litigation immunity and its relation to civil actions for defamatory statements made in the course of judicial and quasi-judicial proceedings: "The doctrine of absolute immunity as applied to statements made in the context of judicial and quasi-judicial proceedings is rooted in the public policy of encouraging witnesses, both complaining and testimonial, to come forward and testify in either criminal or civil actions. The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the [immunity] by making false and malicious statements. . . . [T]he possibility of incurring the costs and inconvenience associated with defending a [retaliatory] suit might well deter a citizen with a legitimate grievance from filing a complaint. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state. . . . As a result, courts have recognized absolute immunity as a [bar to] certain retaliatory civil actions in order to remove this disincen-

tive and thus encourage citizens to come forward with complaints or to testify." (Citations omitted; internal quotation marks omitted.) *Rioux* v. *Barry*, 283 Conn. 338, 343–44, 927 A.2d 304 (2007); see also *Simms* v. *Seaman*, 308 Conn. 523, 538, 69 A.3d 880 (2013) (absolute litigation immunity "was founded [on] the principle that in certain cases it is advantageous for the public interest that persons should not be in any way fettered in their statements, but should speak out the whole truth, freely and fearlessly" (internal quotation marks omitted)). Moreover, our Supreme Court has stated that a court faced with determining whether absolute litigation immunity applies to statements made during a judicial or quasi-judicial proceeding should apply the immunity generously. See, e.g., *Gallo* v. *Barile*, supra, 284 Conn. 467 ("[t]he test for relevancy is generous, and judicial proceeding has been defined liberally to encompass much more than civil litigation or criminal trials" (internal quotation marks omitted)).

When deciding whether absolute immunity applies, however, our Supreme Court has been mindful that "[a]bsolute immunity . . . is strong medicine . . . ." Id., 471. A determination that a defendant's alleged defamatory statements are entitled to absolute litigation immunity closes the courthouse doors to a plaintiff wishing to sue that defendant for harm that those statements may have caused the plaintiff. See *Hopkins* v. *O'Connor*, 282 Conn. 821, 829, 925 A.2d 1030 (2007). Thus, "in determining whether a statement is made in the course of a judicial proceeding [and, pending its pertinence to the proceeding, subjecting it to absolute immunity], it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." (Internal quotation marks omitted.) Id., 839. Put differently, "whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests." *Gallo* v. *Barile*, supra, 284 Conn. 471.

In balancing competing interests to determine whether absolute litigation immunity applies to statements that are pertinent to the judicial or quasi-judicial proceeding in which they are made, our Supreme Court has acknowledged that "[a]bsolute immunity in defamation . . . presents a conflict or antinomy between two principles equally regarded by the law—the right of the individual, on [the] one hand, to enjoy his reputation unimpaired by defamatory attacks, and, on the other hand, the necessity, in the public interest, of a free and full disclosure of facts in the conduct of the legislative, executive and judicial departments of government." Id., 470. The court, however, has concluded that absolute immunity shielding a defendant from suit for these types of statements is often necessary to "[further] the public policy of encouraging participation and candor in [these] proceedings." (Internal quotation marks omit-

ted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 828. Otherwise, "[t]his objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit." (Internal quotation marks omitted.) Id., 828–29. Moreover, "[w]ith respect to statements made in the course of a judicial proceeding, it is widely accepted that the public's interest in the unhampered operation of the government, when exercising [its judicial] functions, outweighs an individual's interest in the preservation of reputation." (Internal quotation marks omitted.) *Gallo* v. *Barile*, supra, 284 Conn. 470.

Thus, our Supreme Court has "consistently . . . applied the doctrine of absolute immunity to defamation actions arising from judicial or quasi-judicial proceedings." *Rioux* v. *Barry*, supra, 283 Conn. 345. In making this determination, the court has concluded that, even though a plaintiff may incur harm as a result of a defendant's defamatory statement about him or her, "the policy concerns underlying absolute immunity—encouraging complaining and testimonial witnesses to come forward—[outweigh] the interest of the private individual in being free from defamation." Id.

In sum, these cases teach important principles of which we are mindful when deciding whether to shield the defendant in the present case from suit for her alleged defamatory statements about the plaintiff. Indeed, in cases in which a person has been sued for making allegedly defamatory statements to a government body that is engaged in a function that is quasi-judicial in nature, a court should err on the side of granting the immunity. That is not to say that a court should not carefully consider the consequences that granting absolute immunity might create, and, if the consequences of absolutely immunizing a defendant from suit outweigh the benefits, then a court should determine that the defendant's statements are not entitled to absolute immunity. A court must be mindful, however, that a person wishing to speak before a government body is not obligated to weigh beforehand whether the body before which he or she is about to speak is performing a quasi-judicial function. Requiring a person to do this would chill the very engagement with government bodies that the immunity seeks to protect and encourage.

Moreover, in the interest of information flowing freely between citizens and government officials, a court must liberally construe whether a statement made during a public hearing is pertinent to the proceeding. See *Gallo* v. *Barile*, supra, 284 Conn. 467. This does not mean that a person always is permitted to make a defamatory statement at a public hearing with impunity. Mindful of these principles, we conclude that the trial court in the present case correctly determined that the defendant's statements were entitled to absolute litiga-

tion immunity.

## A

In claiming that the trial court incorrectly determined that the defendant's statements about the plaintiff at the commission's hearing were entitled to absolute litigation immunity, the plaintiff first argues that the court improperly concluded that the commission's consideration of the plaintiff's final site plan and special permit application constituted a proceeding that was quasi-judicial in nature. The plaintiff argues that all six factors used by our Supreme Court in *Kelley* v. *Bonney*, supra, 221 Conn. 567–71, to determine whether a proceeding is quasi-judicial in nature militate against concluding that the proceeding at which the commission considered his special permit application was quasi-judicial.[8] We disagree.

Our Supreme Court has stated that "[t]he judicial proceeding to which the [absolute litigation] immunity attaches . . . includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986).

Furthermore, our Supreme Court has articulated six factors that may be relevant in determining whether a proceeding is quasi-judicial in nature. See *Kelley* v. *Bonney*, supra, 221 Conn. 567–71. In making this determination, the court considered "whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties." Id., 567. These factors, however, are not exclusive nor must all factors militate in favor of a determination that a proceeding is quasi-judicial in nature for a court to conclude that the proceeding is, in fact, quasi-judicial. See *Mercer* v. *Blanchette*, 133 Conn. App. 84, 91–92, 33 A.3d 889 (2012). Indeed, in addition to considering the six factors, our Supreme Court stated in *Kelley* that "it is important [for a court] to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." *Kelley* v. *Bonney*, supra, 567. In the present case, we conclude, based on the record and the statutes and regulations applicable to the commission, that the first five factors weigh in favor the determination that the commission's proceeding concerning the plaintiff's

special permit application was quasi-judicial in nature.[9]

With respect to the first factor—whether the commission exercised discretion in deciding whether to approve the plaintiff's special permit application; id.; the plaintiff contends that, when "determin[ing] whether the [plaintiff's] proposal [met] the standards set forth in the zoning regulations," the commission was not required to "exercise [any] judgment [or] discretion in deciding whether to grant or deny the [plaintiff's] special permit application." In essence, the plaintiff claims that, when faced with a special permit application, the commission has such minimal discretion in making a decision on the application that the commission is, in effect, a rubber stamp for approving it.

Our Supreme Court, however, has concluded that "the special permit process is, in fact, discretionary." *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 626, 711 A.2d 675 (1998); see also *St. Joseph's High School, Inc.* v. *Planning & Zoning Commission*, 176 Conn. App. 570, 594, 170 A.3d 73 (2017) ("[a] zoning commission can exercise its discretion during the review of the proposed special [permit], as it applies the regulations to the specific application before it" (internal quotation marks omitted)). In support of this conclusion, the court in *Irwin* stated that "[w]hen ruling upon an application for a special permit . . . it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) *Irwin* v. *Planning & Zoning Commission*, supra, 627–28.

Moreover, similar to the plaintiff in the present case, the plaintiff in *Irwin* argued "that the [c]ommission ha[d] no independent discretion to deny a plan [that] satisfies the standards contained in the special permit regulations." (Internal quotation marks omitted.) Id., 628. Our Supreme Court, however, rejected that claim, stating that "[a]lthough it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine whether the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception, as it applies the regulations to the specific applica-

tion before it." (Emphasis omitted.) Id.

In the present case, the commission did, indeed, exercise such discretion. In fact, the Greenwich zoning regulations *require* it. Section 6-17 (a) of the Greenwich Municipal Code, which pertains to authorizations for use by special permit, provides in relevant part that the "[c]ommission *shall* determine that the proposed use conforms with the overall intent of these regulations and the purposes of each zone . . . ." (Emphasis added.) Moreover, § 6-17 (d) states that the commission "*shall* consider all the standards contained in [§] 6-15 (a)" and that it "*shall* consider" twelve enumerated attributes of the proposed use in the special permit application.[10]  (Emphasis added.) In its review of the application, "the [c]ommission [is allowed to] require [the applicant] for [a] special permit to prepare and submit any additional data and studies as necessary to allow the [c]ommission to arrive at its determinations." Greenwich Municipal Code § 6-17 (e). Thus, the commission's decision on the plaintiff's special permit application was not merely a foregone conclusion, as the plaintiff suggests. Indeed, the commission was obligated to deliberate over the plaintiff's special permit application in accordance with the Greenwich zoning regulations and was permitted to require that the plaintiff provide data and studies before the commission ultimately exercised its discretion and determined whether the application complied with the standards set forth in the zoning regulations.

Moreover, the transcript of the commission's hearing is replete with examples of the commission exercising its discretion by entertaining and engaging in discussion over the plaintiff's special permit application. This discussion, at times, involved the standards set forth in § 6-17 of the Greenwich Municipal Code. For example, the discussion at the hearing encompassed whether the placement of the sewer line, as proposed, would impact (1) a historic stone wall, (2) the health of trees that may have important aesthetic value to the neighborhood, and (3) pavement, drainage, and utilities.[11]  For these reasons, we conclude that the first factor militates in favor of determining that the commission's proceeding pertaining to the plaintiff's special permit application was quasi-judicial in nature.

The second factor—whether the commission could ascertain, hear, and decide facts; see *Kelley* v. *Bonney*, supra, 221 Conn. 567; also militates in favor of determining that the proceeding was quasi-judicial in nature. Indeed, the commission was empowered to require that the plaintiff, as a special permit applicant, "prepare and submit any additional data and studies as necessary to allow the [c]ommission to arrive at its determinations." Greenwich Municipal Code § 6-17 (e). Moreover, at the public hearing, the commission was engaged in fact gathering concerning the plaintiff's application; it heard

the statements of D'Andrea, Finkbeiner, and the defendant. Because the commission was engaged in—and, indeed, empowered to engage in—fact-finding pertaining to the plaintiff's special permit application, the second factor weighs in favor of the determination that the proceeding was quasi-judicial in nature.

Likewise, the third factor—whether the commission was empowered to "make binding orders and judgments"; *Kelley* v. *Bonney*, supra, 221 Conn. 567; weighs in favor of determining that the proceeding of the commission was quasi-judicial in nature. The hearing at which the defendant made statements about the plaintiff was a "final meeting . . . to approve [the] plaintiff's application for a new sewer permit . . . ." Moreover, the chairman of the commission noted that a decision on the plaintiff's application would be left "open," which meant that "[the plaintiff had] work to do before [coming] back to [the commission]." From this undisputed information contained in the plaintiff's complaint and the transcript of the hearing, as well as the statutes and regulations applicable to the commission, we conclude that the commission had the ability to approve the plaintiff's application, deny it, or table the issue until a further proceeding. Thus, the third factor weighs in favor of the determination that the commission's proceeding was quasi-judicial in nature.

The fourth factor—whether the commission had the power to "affect the personal or property rights of private persons"; *Kelley* v. *Bonner*, supra, 221 Conn. 567; also supports a conclusion that the commission's proceeding was quasi-judicial in nature. Our Supreme Court has recognized that "[z]oning regulations . . . are in derogation of [common-law] property rights . . . ." *Planning & Zoning Commission* v. *Gilbert*, 208 Conn. 696, 705, 546 A.2d 823 (1988). Indeed, if the commission applied the standards under § 6-17 of the Greenwich Municipal Code and denied the plaintiff's special permit application, it would restrict the plaintiff's ability to use his property in a manner he desires. If, however, the commission approved his application, the sewer line that the plaintiff would place on his property might affect the properties of those in the neighborhood. For these reasons, the fourth factor weighs in favor of the determination that the commission's proceeding was quasi-judicial in nature.

The fifth factor—whether the commission had the power to "examine witnesses and hear the litigation of the issues [at] a hearing"; *Kelley* v. *Bonney*, supra, 221 Conn. 567; also militates in favor of concluding that the commission's proceeding was quasi-judicial in nature. The transcript of the hearing indicates that multiple witnesses spoke about the plaintiff's application during the hearing, including D'Andrea, Finkbeiner, and the defendant. Although these individuals were not addressing the commission under the sanction of an

oath, the fact that a witness is not under oath when providing testimony at a hearing does not weigh against determining that a proceeding is quasi-judicial in nature. See *Petyan* v. *Ellis*, supra, 200 Conn. 251 ("[t]he common law absolute [immunity] itself is not confined to the testimony of a witness but extends to any statement made in the course of a judicial proceeding, whether or not given under oath, so long as it is pertinent to the controversy"); see also 3 Restatement (Second), Torts, Witnesses in Judicial Proceedings § 588, comment (b), p. 250 (1977) ("[Absolute immunity for defamatory statements] protects a witness while testifying. It is not necessary that he give his testimony under oath; it is enough that he is permitted to testify."). Moreover, the absolute immunity applies to "witnesses, whether they testify voluntarily or not . . . ." (Footnote omitted.) W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 114, pp. 816–17. Because the commission heard the testimony of several witnesses at a public hearing on the plaintiff's application, we conclude that the fifth factor supports the conclusion that the commission's proceeding was quasi-judicial in nature.

Lastly, we weigh the final consideration that our Supreme Court utilizes to evaluate whether a government body's proceeding is quasi-judicial in nature: is there "a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." *Kelley* v. *Bonney*, supra, 221 Conn. 567.[12] In analyzing whether public policy interests support a conclusion that a defendant's statements should be entitled to absolute litigation immunity, we are mindful that "[t]he rationale for extending the absolute [immunity] to statements made during quasi-judicial proceedings rests in the public policy that every citizen should have the unqualified right to appeal to governmental agencies for redress without the fear of being called to answer in damages . . . . The absolute [immunity] for communications in the context of quasi-judicial proceedings is intended to protect the integrity of the process and ensure that the quasi-judicial decision-making body gets the information it needs. The policy furthering the general public's right to appeal freely to governmental entities for redress without the fear of lawsuits for libel based on statements made in the context of a quasi-judicial proceeding is of such importance that it is entitled to protection even at the expense of damage to a particular individual." (Footnotes omitted.) 50 Am. Jur. 2d 666–67, Libel and Slander § 283 (2017). Indeed, "*every* judicial or quasi-judicial proceeding creates a potential defamation claim based upon the statements made in connection therewith. Protection against such claims is essential to ensure candor within and fair access to the proceedings." (Emphasis in original; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 636, 79 A.3d 60

(2013).

These important policy interests that are fundamental to encouraging citizen participation in the deliberations and decisions of their local governments are implicated in the present case. Indeed, the defendant attended a hearing of her town's planning and zoning commission at which the commission was considering whether to approve the plaintiff's application, which involved, in part, the placement of a sewer line on his property that could affect the defendant's property and the neighborhood in which she resides. After D'Andrea discussed the site plan and the special permit application and answered questions from members of the commission, members of the public were invited to offer comments. In offering remarks at the hearing, the defendant provided information to the commission that arguably was helpful to that body in assessing the accuracy and truthfulness of the representations made in the plaintiff's submissions.

We conclude that the strong public policy interests in allowing a citizen to offer information to a local government commission on an issue under consideration by it without fear of being sued weighs heavily in favor of determining that the commission's proceeding in this case was quasi-judicial in nature. Indeed, a private citizen wishing to comment on an issue under consideration by a government body at a hearing should not be expected to conduct on the spot legal research to make sure the body before which he or she is about to speak is performing a quasi-judicial function. If we were to conclude that the defendant's statements were not entitled to absolute litigation immunity in this case, then Connecticut residents, fearing suit for defamation, may be chilled from offering information to their local governments on issues related to important decisions that local government officials must make. In light of these policy interests, we conclude that the commission's proceeding, at which it deliberated over the plaintiff's special permit application, was quasi-judicial in nature because the first five factors used by our Supreme Court in *Kelley* v. *Bonney*, supra, 221 Conn. 567, and public policy reasons support this conclusion.

B

The plaintiff next argues that, even if the commission's consideration of the plaintiff's final site plan and special permit application constituted a proceeding that was quasi-judicial in nature, the court improperly concluded that the defendant's statements about the plaintiff were pertinent to the subject matter of the commission's proceeding. Instead, the plaintiff argues that these statements were neither pertinent nor relevant to the commission's proceeding because whether the plaintiff (1) "[was] not . . . trustworthy," (2) "[had] a serious criminal past," and (3) had "paid over $40,000,000 in fines to the SEC" was completely unre-

lated to "the application and whether a certified site plan complies with municipal regulations." Moreover, the plaintiff contends that his credibility was neither pertinent nor relevant to whether his engineers would place the sewer line on his property in accordance with the site plan and whether he had the right to cut trees on his property. The plaintiff asserts that, because the defendant's statements about the plaintiff's criminal past and trustworthiness were neither pertinent nor relevant to the commission's approval of his special permit application, the court incorrectly concluded that the defendant was shielded from suit for defamation by absolute litigation immunity. We disagree.[13]

It is well settled that "[a]t common law, communications uttered or published in the course of judicial proceedings are [entitled to absolute immunity] so long as they are in some way pertinent to the subject of the controversy. . . . [L]ike the [immunity] which is generally applied to pertinent statements made in formal judicial proceedings, an absolute [immunity] also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is quasi-judicial in nature, the absolute [immunity] that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Citation omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 787–88.

Whether statements are pertinent to the subject matter of that proceeding is a question of law for the court to decide. See, e.g., *Gallo* v. *Barile*, supra, 284 Conn. 467; see also 1 D. Pope, supra, § 10:12, p. 10-31 ("[i]t is a question of law for the court to decide whether [a] defamatory [statement] is relevant or material to the particular judicial proceeding"). "In making such a determination, the test is not one of legal relevance, but rather whether the statement has some relation to the judicial proceeding." D. Pope, supra, § 10:12, p. 10-31. Importantly, "[t]*he test for relevancy is generous*." (Emphasis added.) *Gallo* v. *Barile*, supra, 467. This court has tempered this standard, however, stating that, "[a]lthough the test for relevance is very generous, we must balance it against the requirement to construe the evidence in the light most favorable to jurisdiction." *Chamerda* v. *Opie*, 185 Conn. App. 627, 645, 197 A.3d 982, cert. denied, 330 Conn. 953, 197 A.3d 893 (2018).

Furthermore, this court has held that an alleged defamatory statement made in the course of a judicial or quasi-judicial proceeding that concerns the credibility of an interested party or witness is pertinent as a matter of law to the subject matter of the proceeding and thus is entitled to absolute litigation immunity. See *Dlugokecki* v. *Vieira*, 98 Conn. App. 252, 259, 907 A.2d 1269 ("[i]n assessing the *credibility* of speakers at a

public hearing, or the reliability of information provided in support of or in opposition to a pending application, statements as to the motivation of an abutting property owner could be *pertinent to the subject of the controversy*" (emphasis added; internal quotation marks omitted)), cert. denied, 280 Conn. 951, 912 A.2d 483 (2006); *Alexandru* v. *Dowd*, 79 Conn. App. 434, 438–41, 830 A.2d 352 (defendant's alleged defamatory statements were pertinent to proceeding because plaintiff had put her emotional state and physical condition at issue, which were pertinent to the subject of the reliability of the plaintiff's expert witnesses), cert. denied, 266 Conn. 925, 835 A.2d 471 (2003); cf. *Mercer* v. *Blanchette*, supra, 133 Conn. App. 94 (defendant panel member's statements entitled to absolute litigation immunity "[b]ecause the . . . statements . . . whether true or not, related to the subject matter of the proceeding in that the defendant was expressing his basis for questioning the plaintiff's credibility"). This court also has determined that a person can put his or her credibility at issue by making a representation to a government body that concerns a matter on which that body is deliberating. See *Dlugokecki* v. *Vieira*, supra, 258–59 (plaintiff put credibility at issue by making representations to commission in opposition to defendant's application, to which defendant responded "by exposing the plaintiff's bias or improper motive for making negative comments [about his application]").

Turning to the present case, the defendant stated to the commission that the plaintiff had been "very disrespectful" toward the neighbors in the manner in which he was making changes to his property. After expressing some concern for the welfare of the trees if the sewer line was placed in the manner proposed in the application, the defendant stated to the commission that the plaintiff (1) "[was] not . . . trustworthy," (2) "[had] a serious criminal past," and (3) that he had "paid over $40,000,000 in fines to the SEC."

Because the plaintiff put his credibility at issue by submitting a special permit application that was accompanied by representations on which the commission would rely to approve or deny the application, this court must determine not simply whether the alleged defamatory statements were pertinent to the commission's evaluation of the standards set forth in § 6-17 of the Greenwich Municipal Code and its ultimate decision on the plaintiff's application; more precisely, we must decide whether the defendant's statements were pertinent to the plaintiff's credibility and, thus, the reliability of the representations he and those representing him made to the commission in support of his application. Mindful of this analytical framework, we consider each of the plaintiff's alleged defamatory statements and conclude that each was pertinent to the plaintiff's credibility.

The first statement—that the defendant believed that the plaintiff was not trustworthy—clearly is probative of whether the plaintiff should be believed. This court has already held that statements regarding the reliability of testimony or evidence that an interested person or witness has offered during a proceeding is, indeed, pertinent to the subject matter of that proceeding. See *Dlugokecki* v. *Vieira*, supra, 98 Conn. App. 257–59; *Alexandru* v. *Dowd*, supra, 79 Conn. App. 440–41; cf. *Mercer* v. *Blanchette*, supra, 133 Conn. App. 94. In the present case, the defendant's comment that the plaintiff was not trustworthy addressed whether, from her knowledge of the plaintiff's reputation and in her opinion, she believed that the plaintiff's representations were reliable. Under the "generous" standard for determining whether a statement is pertinent to the subject matter of a quasi-judicial proceeding; see *Gallo* v. *Barile*, supra, 284 Conn. 467; the defendant's statement concerning the plaintiff's untrustworthiness was pertinent to the proceeding because it undoubtedly concerned the plaintiff's credibility.

Turning to the defendant's comments concerning the plaintiff's alleged criminal history and misconduct, we conclude that these, too, were pertinent to his credibility and, thus, the reliability of the representations that he and his representatives made to the commission in support of his special permit application. Indeed, albeit in the context of impeaching a witness, our legislature and the Connecticut Code of Evidence recognize that a person's criminal history can bear on that person's credibility. See General Statutes § 52-145 (b) ("[a] person's . . . conviction of crime may be shown for the purpose of affecting his credibility"); Conn. Code Evid. § 6-7 (a). Moreover, evidence of specific acts of conduct that are indicative of a lack of veracity may also be used to discredit the reliability of a person's representations. See Conn. Code Evid. § 6-6 (b).

In the present case, the defendant offered what could be considered either testimony supporting a conclusion that the defendant had been convicted of a crime or that he had engaged in conduct that evidences a lack of veracity. Indeed, the defendant's statement that the plaintiff had a "serious criminal past" easily could be interpreted as an offer by the defendant of information to the commission that the defendant had been convicted of a crime.[14] In addition, her comment that the SEC had imposed a $40,000,000 fine on the defendant reasonably could be interpreted as the defendant's offering—albeit imprecisely—information that the plaintiff previously engaged in conduct that is indicative of him being dishonest. Indeed, the SEC regularly sanctions individuals for engaging in dishonest conduct. See *Kornman* v. *Securities & Exchange Commission*, 592 F.3d 173, 187 (D.C. Cir. 2010) (stating that "the importance of honesty for a securities professional is so para-

mount that [the SEC has sanctioned] individuals even when the conviction was based on dishonest conduct unrelated to securities transactions or securities business" (internal quotation marks omitted)).

The defendant's statements reasonably could be construed as information being offered to the commission that tended to demonstrate that the plaintiff's representations in support of his application were unreliable. Indeed, the credibility of the representations in support of the application that the plaintiff and his agents made to the commission was necessarily pertinent to the subject matter of the proceeding, which was to determine whether the commission should approve the plaintiff's application *based, in part, on the plaintiff's representations*. Moreover, because the test for whether a statement is pertinent to a proceeding is "generous"; see *Gallo* v. *Barile*, supra, 284 Conn. 467; we conclude that the defendant's statements regarding the plaintiff's alleged criminal history and other misconduct, which concerned his credibility, fell within the ambit of what was pertinent to the subject matter of the commission's proceeding.

In affirming the judgment of the trial court, we take this occasion to express our concern that this case arguably lies near the outer boundaries of the public policy justifications that underlie the absolute litigation immunity doctrine. This decision should not be construed to indicate that such immunity will always extend to any generalized attack on the character of a person who has made factual representations in a judicial or quasi-judicial proceeding. If, for example, the defendant had made defamatory statements about the plaintiff that bore less of a connection to his veracity, then we may be disinclined to conclude that such defamatory statements should enjoy the "strong medicine" of immunity. We leave, however, those issues to a later day.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The press was in attendance at the hearing. A local newspaper published parts of the defendant's statement, which included her allegation that the plaintiff was a "criminal" and that he has "a serious criminal past and paid over $40 million in fines." "Deer Park Clear-Cutting without P+Z Consent Stalls Thomas Priore's Dream House," Greenwich Free Press, January 17, 2016, available at https://greenwichfreepress.com/news/government/deer-park-clear-cutting-without-pz-consent-stalls-thomas-priores-greenwich-dream-house-56771/ (last visited March 20, 2020).

[2] The plaintiff attached two exhibits to his motion to reargue. The first is the transcript of the oral argument on the defendant's motion to dismiss. The second is a memorandum of decision issued in *Pursuit Partners, LLC* v. *UBS AG*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-08-4013452-S (July 3, 2014). The plaintiff asserted in his motion to reargue that this decision bolstered his claim that the trial court should have provided an evidentiary hearing.

[3] At oral argument before this court, the plaintiff stated that he did not request an evidentiary hearing before the trial court decided the defendant's motion to dismiss because he believed that the trial court would deny the defendant's motion to dismiss. This is a classic example of a party improperly using a motion to reargue to obtain a second bite of the apple. See *Gibbs*

v. *Spinner*, supra, 103 Conn. App. 507.

[4] The plaintiff asserts that this court's decision in *Hayes Family Ltd. Partnership* v. *Glastonbury*, 132 Conn. App. 218, 219–24, 31 A.3d 429 (2011), supports his claim that this court should reverse the trial court's granting of the motion to dismiss and remand with instructions to the trial court to conduct an evidentiary hearing. In its memorandum of decision concerning the plaintiff's motion to reargue, the trial court stated, and we agree, that *Hayes Family Ltd. Partnership* is "inapposite" to the present case.

In that case, the trial court granted the defendant's motion to dismiss based on the complaint and the affidavits submitted by both parties, even though a "critical fact" remained in dispute. *Hayes Family Ltd. Partnership* v. *Glastonbury*, supra, 132 Conn. App. 223–24. Thus, this court reversed the trial court's judgment and remanded with instructions to conduct an evidentiary hearing on the factual issue in dispute. Id., 224.

The present case clearly is distinguishable from *Hayes Family Ltd. Partnership*. Indeed, the plaintiff has failed to satisfy his burden of proffering evidence and establishing that a genuine dispute exists as to a material jurisdictional fact. See *St. Denis-Lima* v. *St. Denis*, supra, 190 Conn. App. 306; *Property Asset Management, Inc.* v. *Lazarte*, supra, 163 Conn. App. 749. Thus, we conclude that *Hayes Family Ltd. Partnership* does not control our decision on the plaintiff's claim that the trial court incorrectly denied him an evidentiary hearing.

[5] In his appellate brief, the plaintiff states that the trial court deprived him of his due process rights and his right to access the court system, as guaranteed by article first, § 10, of the Connecticut constitution, by not applying the proper standard when deciding the defendant's motion to dismiss and by denying him an evidentiary hearing on jurisdictional facts that, he claims, were in dispute. Because we conclude that those claims are inadequately briefed, we decline to address them. See *State* v. *Randolph*, 284 Conn. 328, 375 n.12, 933 A.2d 1158 (2007) (state constitutional claims that are inadequately briefed are deemed abandoned).

[6] "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Citations omitted; internal quotation marks omitted.) *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004). "Defamation is comprised of the torts of libel and slander. . . . Slander is oral defamation. . . . Libel . . . is written defamation." (Citation omitted; internal quotation marks omitted.) *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 851–52, 825 A.2d 827, cert. denied, 267 Conn. 901, 838 A.2d 210 (2003).

[7] "Absolute immunity for defamatory statements made in the course of judicial proceedings has been recognized by common-law courts for many centuries . . . ." *Simms* v. *Seaman*, 308 Conn. 523, 531, 69 A.3d 880 (2013); see also *Villages, LLC* v. *Longhi*, 166 Conn. App. 685, 699, 142 A.3d 1162, cert. denied, 323 Conn. 915, 149 A.3d 498 (2016). The courts of this state have also "long recognized the litigation [immunity]." *Simms* v. *Seaman*, supra, 536; see also *Villages, LLC* v. *Longhi*, supra, 699.

[8] Furthermore, the plaintiff contends that, when determining whether to approve a special permit, the commission is performing an inherently "administrative" function. In stating this, the plaintiff assumes that a proceeding that is "administrative" in nature cannot be quasi-judicial. The plaintiff, however, relies on a false dichotomy, because our Supreme Court has stated that a proceeding can be both administrative *and* quasi-judicial. See *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 150, 653 A.2d 798 (1995) ("[t]he discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an *administrative board, which serves a quasi-judicial function*" (emphasis added)); see also *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986) ("*administrative* officers, such as boards and commissions" are *quasi-judicial* if they possess discretion in applying law to facts (emphasis added)). Indeed, "[a]*dministrative* enforcement agencies often perform multiple functions, *some but not all* of which are *quasi-judicial*. [For example] [c]onducting hearings on the prosecution of violations resembles the inherently *discretionary* roles of judge and prosecutor, and state administrative proceedings are *sufficiently comparable* to judicial proceedings to warrant the extension of immunity

to an *administrative* hearing officer engaging in a function that is *quasi-judicial in nature*." (Emphasis added; footnotes omitted.) 2 Am. Jur. 2d 522, Administrative Law § 562 (2014).

[9] The trial court concluded that the sixth factor—whether the body has the power to "enforce decisions or impose penalties"—is "inapplicable" to the present case. Even if we assume, without deciding, that the commission lacks this power and, thus, that this factor weighs in favor of the plaintiff, we nevertheless conclude that the commission's proceeding was quasi-judicial in nature because the other five factors support this conclusion.

[10] "In reviewing special permits, the . . . [c]ommission shall consider all the standards contained in [§] 6-15 (a). In granting any special permit the [c]ommission shall consider in each case whether the proposed use will:

"(1) Be in accordance with the Plan of Development.

"(2) Not prevent or inhibit the orderly growth of the retail business development of the area.

"(3) Not adversely affect storm drainage, sewerage disposal or other municipal facilities. (6/11/86)

"(4) Not materially adversely affect adjacent areas located within the closest proximity to the use.

"(5) Not materially obstruct significant views which are important elements in maintaining the character of the Town for the purpose of promoting the general welfare and conserving the value of buildings.

"(6) Preserve or enhance important open space and other features of the natural environment and protect against deterioration of the quality of the environment, as related to the public health, safety and welfare. (6/11/86)

"(7) Not interfere with pedestrian circulation, most particularly as related to retail shopping patterns.

"(8) Not adversely affect safety in the streets nor increase traffic congestion in the area so as to be inconsistent with an acceptable level of service nor interfere with the pattern of highway circulation. (6/11/86)

"(9) Be in scale with and compatible with surrounding uses, buildings, streets and open spaces.

"(10) Preserve land, structures or features having special historical, cultural, or architectural merit. (3/1/82)

"(11) Will not materially adversely affect residential uses, nor be detrimental to a neighborhood or its residents, nor alter a neighborhood's essential characteristics. (6/13/84)

"(12) Preserve where possible existing housing stock so as to maintain and contribute to a diversity of housing opportunities within the Town. (6/11/86)." Greenwich Municipal Code § 6-17 (d).

[11] Indeed, commission member Margarita Alban, in an exchange with D'Andrea, raised § 6-17 of the Greenwich Municipal Code and one of the standards—a special permit's effect on the character of the town and the neighborhood—of that regulation that requires the commission to consider when deciding whether to approve a special permit. Alban offered to read § 6-17 aloud, to which D'Andrea declined.

[12] In determining whether statements are entitled to absolute immunity, our Supreme Court has utilized six factors to determine whether a proceeding is quasi-judicial in nature and, as part of a more overarching inquiry, whether public policy justifies entitling statements to absolute immunity under the circumstances. See *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 85, 92–93; *Kelley* v. *Bonney*, supra, 221 Conn. 567, 571. We construe these analyses to be two separate inquiries. The first analysis considers whether a proceeding is quasi-judicial in nature by assessing whether the government body conducting the proceeding has powers that are characteristic of a body acting in a quasi-judicial capacity. See *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 84–90; *Kelley* v. *Bonney*, supra, 221 Conn. 567–71. The second inquiry asks, regardless of whether a proceeding is quasi-judicial in nature, should the statements at issue made during the proceeding be entitled to absolute immunity as a matter of public policy. See *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 85, 95-96; *Kelley* v. *Bonney*, supra, 221 Conn. 571; *Mercer* v. *Blanchette*, supra, 133 Conn. App. 91–92.

[13] On appeal, the plaintiff claims that the trial court incorrectly analyzed whether the defendant's statements were "pertinent" to the subject matter of the proceeding. Instead, he asserts that the court should have considered whether the statements were "relevant" because the statements were made during a quasi-judicial proceeding, not a judicial proceeding. We are unpersuaded, however, because the terms "pertinent" and "relevant" have been used interchangeably by our courts, and no courts have attached different

meanings to these terms when determining whether a defendant is entitled to absolute litigation immunity. Compare *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 84 ("[l]ike the [immunity] which is generally applied to *pertinent* statements made in formal *judicial* proceedings, an absolute [immunity] also attaches to *relevant* statements made during administrative proceedings which are *quasi-judicial* in nature" (emphasis added)), with *Dlugokecki* v. *Vieira*, 98 Conn. App. 252, 257, 907 A.2d 1269 ("[t]he . . . issue . . . is whether the statements [made in the course of the *quasi-judicial* proceeding] were *pertinent* to the subject of the controversy" (emphasis added; internal quotation marks omitted)), cert. denied, 280 Conn. 951, 912 A.2d 483 (2006).

[14] To the extent that the plaintiff relies on our Supreme Court's decision in *Gallo* v. *Barile*, supra, 284 Conn. 471, to support a conclusion that false statements concerning criminal wrongdoing are not entitled to absolute immunity, that case is distinguishable from the present case because the statements in *Gallo* were not made in the course of a judicial or quasi-judicial proceeding. Indeed, our Supreme Court concluded that its decision in *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 88–90, did not control the outcome of *Gallo* because "the statements at issue in *Craig* fell squarely within the [immunity] for statements made in the course of a quasi-judicial proceeding." *Gallo* v. *Barile*, supra, 284 Conn. 474. Moreover, the court in *Gallo* acknowledged that "[i]t is well established that allegations contained in a complaint in a quasi-judicial proceeding, like allegations contained in a complaint in a judicial proceeding, are [entitled to absolute immunity]." Id.