# THOMAS PRIORE *v.* STEPHANIE HAIG
## (SC 20511)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the common law of this state, communications made in the course of and in furtherance of administrative proceedings that are quasi-judicial in nature are absolutely privileged.

Pursuant further to *Kelley* v. *Bonney* (221 Conn. 549), in determining whether an administrative proceeding is quasi-judicial in nature, a court may consider whether the body or entity conducting the proceeding has the discretion to apply the law to the facts and the authority (1) to exercise judgment and discretion, (2) to hear and determine or to ascertain facts and decide, (3) to make binding orders and judgments, (4) to affect the personal or property rights of private persons, (5) to examine witnesses and to hear the litigation of the issues, and (6) to enforce decisions or to impose penalties.

The plaintiff sought to recover damages for, inter alia, defamation in connection with statements that the defendant had made about the plaintiff at a public hearing before a town planning and zoning commission in connection with the plaintiff's application for a special permit to construct a new house and to install a new sewer line on his property. At the hearing, the defendant expressed her concerns regarding the plaintiff's application, stating, inter alia, that the plaintiff had not been trustworthy in prior dealings involving his application, that he had "a serious criminal past," and that he had paid more than $40 million in fines to the federal agency charged with enforcing federal securities

Priore *v.* Haig

laws. The defendant filed a motion to dismiss the plaintiff's action for lack of subject matter jurisdiction, claiming that her statements were entitled to absolute immunity. The trial court granted the defendant's motion, concluding that her statements were entitled to absolute immunity because the proceeding before the commission was quasi-judicial in nature and the defendant's statements were pertinent to the proceeding. Accordingly, the trial court rendered judgment dismissing the action, from which the plaintiff appealed to the Appellate Court. The Appellate Court affirmed the trial court's judgment, reasoning that the first five factors set forth in *Kelley*, as well as certain public policy interests, weighed in favor of a determination that the proceeding was quasi-judicial. On the granting of certification, the plaintiff appealed to this court. *Held* that the Appellate Court incorrectly determined that the public hearing before the commission was a quasi-judicial proceeding, the defendant's statements therefore were not entitled to absolute immunity, and, accordingly, this court reversed the Appellate Court's judgment and remanded the case for further proceedings: courts charged with determining whether a proceeding is quasi-judicial in nature may consider, in addition to the six factors set forth in *Kelley*, any other factors that are relevant to the particular proceeding, including the procedural safeguards in place to ensure the reliability of the information presented at the proceeding and the authority of the body or entity to regulate the proceeding, and those courts must carefully scrutinize whether there is a sound public policy justification for affording absolute immunity in any given context; in the present case, the commission had discretion, pursuant to well settled principles of administrative law and the applicable municipal code, to apply the law to the facts set forth in the plaintiff's special permit application, the relevant statutes and regulations authorized the commission to approve, deny or table decision on the application, thus empowering the commission to make binding orders, and the commission's action on a special permit application generally would affect the property rights of the applicant or surrounding property owners, such that the first four factors set forth in *Kelley* weighed in favor of a determination that the proceeding at issue was quasi-judicial in nature; nevertheless, this court concluded that the hearing on the plaintiff's special permit application was not quasi-judicial in nature because it lacked procedural safeguards that would have served to ensure the reliability of the information presented, as there was no requirement that a declarant appearing before the commission make his or her statements under oath or otherwise certify that the information conveyed is accurate, there was no practical opportunity to meaningfully challenge the veracity of a declarant's statement, and there was no remedy available to the commission during a hearing if a witness were to convey knowingly false information, such as a charge of perjury; moreover, a local commission generally has limited authority to reject evidence, hold speakers accountable for statements made during the hearing, or other-

Priore *v.* Haig

wise limit what information is presented to ensure the reliability of the proceeding, and public policy considerations militated against a conclusion that the proceeding at issue was quasi-judicial in nature because the public benefit to be derived from affording absolute immunity to statements made during a commission hearing was not sufficiently compelling in view of the possible damage that untruthful statements may cause to individual reputations, the lack of procedural safeguards in place to ensure reliability, and the protection afforded by the statute (§ 52-196a (b)) permitting a court to dismiss a complaint based on an opposing party's exercise of his or her constitutional right to free speech in connection with a matter of public concern; furthermore, this court's conclusion that the defendant's statements before the commission were not entitled to absolute immunity was consistent with the decisions of sister state courts that have determined that proceedings before a planning and zoning commission are not quasi-judicial in nature.

*(Three justices concurring in part in one opinion)*

Argued January 10—officially released September 7, 2022*

*Procedural History*

Action to recover damages for defamation, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Povodator*, *J.*, granted the defendant's motion to dismiss and rendered judgment dismissing the action, from which the plaintiff appealed to the Appellate Court, *Alvord*, *Prescott* and *Pellegrino*, *Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Eric D. Grayson*, for the appellant (plaintiff).

*Richard W. Bowerman*, with whom, on the brief, was *Michael G. Caldwell*, for the appellee (defendant).

*Opinion*

McDONALD, J. This certified appeal requires us to determine whether a public hearing on a special permit application before a town's planning and zoning com-

* September 7, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Priore *v.* Haig

mission is a quasi-judicial proceeding such that public statements made during the hearing are entitled to absolute immunity. The plaintiff, Thomas Priore, brought this defamation action against the defendant, Stephanie Haig, seeking to recover damages for injuries that he claims to have sustained as a result of the defendant's allegedly defamatory statements about the plaintiff made during a hearing before the Greenwich Planning and Zoning Commission. The plaintiff appeals from the judgment of the Appellate Court, which affirmed the trial court's judgment, concluding that the defendant's statements were entitled to absolute immunity. *Priore* v. *Haig*, 196 Conn. App. 675, 695, 712, 230 A.3d 714 (2020). On appeal, the plaintiff contends that the Appellate Court incorrectly concluded that the defendant's statements were entitled to absolute immunity because the hearing before the commission was not quasi-judicial and the statements concerning the plaintiff were not relevant to the subject matter of the commission's hearing. We agree with the plaintiff that the public hearing was not quasi-judicial in nature and, accordingly, reverse the judgment of the Appellate Court.

The record and the Appellate Court's opinion set forth the facts and procedural history; see id., 677–83; which we summarize in relevant part. In "2015, the plaintiff, through a limited liability company, purchased a property located at 15 Deer Park Meadow Road in Greenwich . . . . The property is part of a private subdivision known as the Deer Park Association . . . ." Id., 677. After purchasing the property, the plaintiff intended to demolish the existing house and build a new house. In addition to constructing the new house, the plaintiff agreed to replace an inaccessible sewer line that ran through the middle of his property and serviced a number of up-line users. Through an easement that the plaintiff agreed to grant, the new sewer

Priore *v.* Haig

line would be available to other members of the association for access and repairs.

As part of the process for obtaining the commission's approval to construct the new house and to place the new sewer line on his property, the plaintiff was required to submit an application for a special permit. The plaintiff submitted the application and a final site plan, and, in January, 2016, the commission held a public hearing on the plaintiff's application. The hearing was to be the final hearing concerning the approval of the plaintiff's application. The primary issue to be addressed at the hearing was the location of the new sewer line. The record is silent as to whether the plaintiff attended the hearing.

The plaintiff's engineer, Anthony D'Andrea, attended the hearing and was the first person to address the commission concerning the plaintiff's application. He discussed various aspects of the plan to install the sewer line, including the way in which the installation of the sewer line might affect certain trees still existing on the property. "D'Andrea stated that trees had been 'removed during the demolition of the house' and that . . . a planting plan would be submitted 'that [would] include at least twenty [new] trees.' " Id., 678. D'Andrea also stated that the placement of the sewer line would protect the trees in the area, and the goal was to maximize the number of trees that could be preserved.

Thereafter, members of the public were invited to address the commission. The president of the Deer Park Association spoke first and informed the commission, among other things, that "subsequent speakers . . . would address the commission about trees that were important to members of the association. According to the president, the trees were important because they 'provide[d] privacy [and were] part of the character' of the neighborhood." Id. Michael Finkbeiner, a surveyor

Priore *v.* Haig

and consulting professional forester retained by a member of the Deer Park Association, next addressed the commission. He stated that certain trees had already been cut down on the plaintiff's property and, "as a result of the plaintiff's representations [in his filings], the commission may have 'been deceived into thinking [that the trees shown in a topographic survey are] existing trees, but they are no more.' " Id., 679.

Later in the hearing, the defendant, the plaintiff's neighbor to the west, addressed the commission. She explained that she was worried that the plaintiff's proposed "sewer line would impact the health of the trees that she claimed to 'co-own' with the plaintiff. She also stated that the plaintiff had been 'very disrespectful of the neighbors' " throughout the process. Id. Important to the present appeal, the defendant went on to state that the plaintiff "does have a criminal past. I will not go into the exact details of it, but it's a serious criminal past. He's paid [more than] $40 million in fines to the [Securities and Exchange Commission]." In response, a planning and zoning commission member stated, "[t]hat's not of relevance to the [commission]." The defendant then concluded her remarks by expressing her desire for the commission to provide "real good oversight" of the project "because [the plaintiff] has not been trustworthy in the first dealings with us, and there are many more dealings to go."

D'Andrea again addressed the commission and acknowledged that a drawing of the property submitted by the plaintiff failed to indicate that certain trees had already been cut down. He also claimed, however, that the trees that the plaintiff had removed were present on the property at the time the application was submitted. In response, a member of the commission noted that the drawing the plaintiff had submitted was incomplete because it did not accurately depict the trees. The chairperson of the commission asked D'Andrea to

Priore *v.* Haig

reconcile the drawing in light of the information that Finkbeiner had submitted. D'Andrea agreed to do so.

The commission adjourned the hearing and "tabl[ed] the decision on whether to approve the application until the plaintiff or his representatives provided it with the clarifications and information that it had requested." *Priore* v. *Haig*, supra, 196 Conn. App. 680. Thereafter, "the commission ultimately approved the plaintiff's [special permit] application 'with very little change or requirements from the town . . . .' " Id.

The plaintiff commenced this action in October, 2016. In his second revised complaint, sounding in libel per se, libel per quod, slander per se, slander per quod, and defamation, the plaintiff alleged that he had suffered "reputational damage . . . in his standing in the community and in his profession" because, during the January, 2016 public hearing, the defendant falsely accused him of prior criminal misconduct and of being untrustworthy. The defendant filed an answer and special defenses, denying the allegations and asserting, among other things, that she was immune from suit for defamation because she made those statements in the course of a quasi-judicial proceeding. The plaintiff moved to strike that defense.

The defendant then filed an objection to the plaintiff's motion to strike and, in the same document, moved to dismiss the plaintiff's action, claiming, among other things, that the trial court lacked subject matter jurisdiction over the plaintiff's action because the statements she made during the commission's hearing were entitled to absolute immunity. The plaintiff filed an objection to the defendant's motion to dismiss.

In January, 2018, the trial court granted the defendant's motion to dismiss. The trial court reasoned that it did not have jurisdiction over the plaintiff's claims because the statements that the defendant made about

Priore *v.* Haig

the plaintiff at the commission's hearing were entitled to absolute immunity. In reaching this conclusion, the court determined that the commission's hearing on the special permit application constituted a quasi-judicial proceeding. The court also determined that the defendant's statements were pertinent to the subject matter of the hearing because they concerned the plaintiff's credibility. The court reasoned that the commission had to weigh the plaintiff's credibility when reviewing the representations that the plaintiff and his agents made to the commission in order to decide whether to approve his application. The plaintiff subsequently filed a motion to reargue and for reconsideration, which the trial court denied.

Thereafter, the plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. *Priore* v. *Haig,* supra, 196 Conn. App. 712. The Appellate Court agreed with the trial court's conclusion that the defendant's statements were entitled to absolute immunity because the hearing before the commission was quasi-judicial and the defendant's statements were pertinent to the hearing. See id., 690–91, 705, 711. In reaching its conclusion that the hearing was quasi-judicial, the Appellate Court applied the six factors enumerated by this court in *Kelley* v. *Bonney,* 221 Conn. 549, 567, 606 A.2d 693 (1992); see *Priore* v. *Haig,* supra, 696–703; and determined that the first five factors weighed in favor of the determination that the hearing was quasi-judicial. Id., 697. The Appellate Court also concluded that public policy interests further supported this conclusion. Id., 705. In so concluding, however, the court also stated: ''[W]e take this occasion to express our concern that this case arguably lies near the outer boundaries of the public policy justifications that underlie the absolute litigation immunity doctrine.'' Id., 711.

The plaintiff subsequently filed a petition for certification to appeal, which we granted, limited to the follow-

Priore *v.* Haig

ing issue: "Did the Appellate Court correctly conclude that the defendant's public statements about the plaintiff at the meeting of the [commission] were entitled to absolute immunity, depriving the trial court of subject matter jurisdiction over the plaintiff's defamation action?" *Priore* v. *Haig*, 335 Conn. 955, 955–56, 239 A.3d 317 (2020).

On appeal, the plaintiff contends that the defendant's statements at the hearing are not entitled to absolute immunity because the hearing before the commission was not quasi-judicial. The plaintiff argues that, notwithstanding the *Kelley* factors, the "focus of whether a hearing is truly quasi-judicial should be centered on whether it . . . resembles a court or tribunal proceeding and has procedural safeguards [that] promote reliability and due process." The plaintiff contends that there were no procedural safeguards in place at the commission's hearing, and, as a result, it was not quasi-judicial. Even if the hearing was quasi-judicial, the plaintiff contends, the defendant's statements were not entitled to absolute immunity because the statements were not relevant to the hearing.[1] The defendant disagrees and contends that the Appellate Court properly applied the *Kelley* factors to conclude that the hearing was quasi-judicial and correctly concluded that the defendant's statements were pertinent to the hearing.

Before addressing the merits of the plaintiff's claim on appeal, we note the standard that governs our review in this case. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the

---

[1] The plaintiff also contends that the Appellate Court improperly applied a "pertinence" standard when it should have applied a "relevance" standard. Because we conclude that the hearing was not quasi-judicial, we need not address this contention. See footnote 8 of this opinion.

Priore *v.* Haig

face of the record, the court is without jurisdiction.
. . . [O]ur review of the trial court's ultimate legal con-
clusion and resulting [decision to] grant . . . the
motion to dismiss will be de novo.'' (Internal quotation
marks omitted.) *Styslinger* v. *Brewster Park, LLC*, 321
Conn. 312, 316, 138 A.3d 257 (2016). ''In undertaking
this review, we are mindful of the well established
notion that, in determining whether a court has subject
matter jurisdiction, every presumption favoring juris-
diction should be indulged.'' (Internal quotation marks
omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 614, 109
A.3d 903 (2015). The parties do not dispute that absolute
immunity implicates the trial court's subject matter
jurisdiction. See, e.g., *Scholz* v. *Epstein*, 341 Conn. 1,
8–9, 266 A.3d 127 (2021). In addition, the determination
of whether a public hearing on a special permit applica-
tion before a town's planning and zoning commission
constitutes a quasi-judicial proceeding presents a ques-
tion of law, over which our review is plenary. See, e.g.,
*Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 83,
856 A.2d 372 (2004). ''Within this limitation, however,
whether a particular proceeding is quasi-judicial in
nature, for the purposes of triggering absolute immu-
nity, will depend on the particular facts and circum-
stances of each case.'' Id., 83–84.

This court has long held that ''communications uttered
or published in the course of judicial proceedings are
absolutely privileged [as] long as they are in some way
pertinent to the subject of the controversy.'' (Internal
quotation marks omitted.) *Gallo* v. *Barile*, 284 Conn.
459, 466, 935 A.2d 103 (2007); see, e.g., *Charles W.
Blakeslee & Sons* v. *Carroll*, 64 Conn. 223, 232, 29 A.
473 (1894) (recognizing privilege), overruled in part on
other grounds by *Petyan* v. *Ellis*, 200 Conn. 243, 510
A.2d 1337 (1986). The effect of such an absolute privi-
lege is that damages cannot be recovered for the publi-
cation of a privileged statement, even if the statement

Priore *v.* Haig

is defamatory. See, e.g., *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 84.

"The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . The rationale underlying the privilege is grounded [on] the proper and efficient administration of justice. . . . Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of [actions seeking damages for statements made by such participants in the course of the judicial proceeding]." (Citations omitted; internal quotation marks omitted.) *Hopkins* v. *O'Connor*, 282 Conn. 821, 838–39, 925 A.2d 1030 (2007). "Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial . . . proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit." *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 787, 865 A.2d 1163 (2005).

"[L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is [quasi-judicial] in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Bonney*, supra, 221 Conn. 565–66. We have repeatedly explained, however, that "[t]he . . . proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether

Priore *v.* Haig

the hearing is public or not. It includes . . . lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character.'' (Internal quotation marks omitted.) Id., 566. The uncertainty as to which proceedings are quasi-judicial in nature persists to this day. See, e.g., *Kenneson* v. *Eggert*, 196 Conn. App. 773, 782, 230 A.3d 795 (2020).

This court has formulated various standards for determining whether a proceeding is quasi-judicial. First, in *Petyan* v. *Ellis*, supra, 200 Conn. 243, we described the test for determining whether a proceeding before a board or commission is quasi-judicial as an inquiry into whether the board or commission "ha[s] powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character.'' (Internal quotation marks omitted.) Id., 246. Applying that test, we concluded that information provided by a defendant employer on a " 'fact-finding supplement' '' form of the employment security division of the state Department of Labor was entitled to absolute immunity. Id., 247–48. We reasoned that, "[i]n the processing of unemployment compensation claims, the administrator, the referee and the [E]mployment [S]ecurity [B]oard of [R]eview decide the facts and then apply the appropriate law. . . . The employment security division of the . . . department, therefore, acts in a quasi-judicial capacity when it acts [on] claims for unemployment compensation.'' (Citations omitted; footnotes omitted.) Id., 248–49.

In *Kelley* v. *Bonney*, supra, 221 Conn. 549, this court next considered whether a teaching certificate revocation proceeding before the state Board of Education was quasi-judicial in nature. See id., 566–71. After reiter-

Priore *v.* Haig

ating the rule from *Petyan* that a proceeding may be quasi-judicial when the body or entity conducting the proceeding has the discretion to apply the law to the facts, this court went on to identify additional factors that could "assist in determining whether a proceeding is [quasi-judicial] in nature. Among them are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties." Id., 567. These "factors are not exclusive; nor must all factors militate in favor of a determination that a proceeding is quasi-judicial in nature for a court to conclude that the proceeding is, in fact, quasi-judicial." (Internal quotation marks omitted.) *Carter* v. *Bowler*, 211 Conn. App. 119, 123, 271 A.3d 1080 (2022). We have made clear that these factors are "[i]n addition" to, not in lieu of, the application of the law to fact requirement. *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 85. Indeed, the first two factors largely mirror *Petyan*'s law to fact requirement. See *Petyan* v. *Ellis*, supra, 200 Conn. 246. This court, in *Kelley*, went on to conclude that the teaching certificate revocation proceeding was quasi-judicial. *Kelley* v. *Bonney*, supra, 571. Specifically, the court pointed to the "significant regulatory authority to conduct proceedings of a [quasi-judicial] nature. The detailed procedures, which ensure the reliability of teacher decertification proceedings, and the compelling public policy concern for the protection of [school-age] children persuade us that the decertification proceedings before the state [B]oard of [E]ducation were [quasi-judicial] in nature . . . ." Id.

The plaintiff contends that, although not specifically enumerated in the *Kelley* factors, our case law also

Priore *v.* Haig

looks to the procedural safeguards that attend to the proceeding and the authority of the entity to regulate the proceeding, which promote reliability and due process, as part of the analysis to determine whether a proceeding is truly quasi-judicial in nature.[2] We agree.

For example, in *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 78, this court, in concluding that an investigation by a police department's internal affairs division constituted a quasi-judicial proceeding; see id., 93; expressly relied on out-of-state case law that considered "the procedural safeguards provided by the statutory scheme governing disciplinary proceedings [that] were adequate to minimize the occurrence of defamatory statements." (Internal quotation marks omitted.) Id., 91. This court explained that the internal affairs investigation at issue in *Craig* provided procedural safeguards, namely, "[t]he witnesses give sworn statements to the investigator during the investigation, and the form on which they sign their statement[s] informs the witness that he or she can be criminally liable for filing a false statement." Id., 87. Moreover, "[a]t the formal hearing, the [police] officer has a right to be represented by counsel. . . . In addition, the [police] department subpoenas witnesses to testify at the formal hearing, and . . . it is undisputed that the witnesses complied with the subpoena and testified before the hearing offi-

_____

[2] The plaintiff also asks us to adopt the standard articulated by the Court of Appeals of Maryland in *Gersh* v. *Ambrose*, 291 Md. 188, 434 A.2d 547 (1981). In *Gersh*, the court explained that the nature and scope of administrative proceedings are "too varied to be circumscribed by specific criteria. Rather, we have decided that whether absolute witness immunity will be extended to any administrative proceeding will have to be decided on a case-by-case basis and will in large part turn on two factors: (1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements." Id., 197. We decline the plaintiff's invitation to adopt this test to replace an analysis based on the other considerations our case law has identified. We think the better course is to consider procedural safeguards as part of a broader quasi-judicial analysis, as our case law has consistently done.

Priore *v.* Haig

cer. Witnesses who testify at the formal hearing are sworn and must testify under oath. The [police] officer also has the right to cross-examine the witnesses. In addition, at the formal hearing, a city attorney is present in order to rule on questions of evidence. During the hearing, the hearing officer takes notes on the testimony and evidence presented and, thereafter, transcribes his notes into typed form, which constitutes the record for the purposes of the hearing. After the hearing is concluded, the hearing officer makes findings and a recommendation of decision regarding the appropriate punishment.'' Id., 88.

Similarly, in *Kelley*, this court looked to the nature of the procedural safeguards that were incorporated in the structure of the proceeding and noted that ''a request for revo[king] . . . [a teaching certificate had to be] made under oath . . . . Upon receipt of such request, the state board of education had to conduct a preliminary inquiry to determine whether probable cause for revocation of the certificate existed.'' *Kelley* v. *Bonney*, supra, 221 Conn. 568–69. In the event the state Board of Education held a hearing, ''the holder [of the teaching certificate] was entitled to be heard, to examine the records of investigations, to be present throughout the hearing, to be represented by counsel, to call and cross-examine witnesses and to present oral argument.'' Id., 570.

In *Petyan*, this court also looked to the procedural safeguards involved and found it significant that the state employment security division possessed subpoena power and that the defendant was required to certify that the information he forwarded to the state was true and correct. See *Petyan* v. *Ellis*, supra, 200 Conn. 250, 251. Finally, in *Hopkins* v. *O'Connor*, supra, 282 Conn. 821, we concluded that a commitment proceeding was judicial in nature ''[b]ecause of the significant procedural protections'' afforded by the proceeding. Id., 831;

Priore *v.* Haig

see also id., 831 n.3 (noting that procedural protections include respondent's right to be present at hearing, right to appointed counsel, right to cross-examine witnesses, and right to appeal from adverse decision).

We think it eminently reasonable for courts to consider the procedural safeguards attendant to a proceeding because "[s]tatements made during proceedings that lack basic [due process] protections generally do not engender fair or reliable outcomes." *Spencer* v. *Klementi*, 136 Nev. 325, 333, 466 P.3d 1241 (2020). As a result, proceedings that lack such procedural safeguards do not adequately protect a critical public policy undergirding the doctrine of absolute immunity—to encourage robust participation and candor in judicial and quasi-judicial proceedings while providing some deterrent against malicious falsehoods. In an analogous context, we look to, among other things, the "procedural safeguards [that exist] in the system that would adequately protect against [improper] conduct by [a government] official" when determining whether the official should be accorded absolute judicial immunity. (Internal quotation marks omitted.) *Gross* v. *Rell*, 304 Conn. 234, 249, 40 A.3d 240 (2012). Accordingly, we agree with the plaintiff that the procedural safeguards of the proceeding and the authority of the entity to regulate the proceeding, which promote reliability and due process safeguards to ensure that accusatory or unflattering allegations are subject to the requirements of reliability, are relevant considerations that are part of a court's analysis of whether a particular proceeding is quasi-judicial in nature.[3] See, e.g., 50 Am. Jur. 2d 667–68, Libel and Slander § 283 (2017) ("[w]hether the

[3] Although not explicitly enumerated in *Kelley*, we note that a consideration of the procedural safeguards of a proceeding and the authority of the entity to regulate the proceeding are similar to the fifth *Kelley* factor— whether the entity or the body conducting the proceeding has the power to "examine witnesses and [to] hear the litigation of the issues on a hearing . . . ." *Kelley* v. *Bonney*, supra, 221 Conn. 567.

Priore *v.* Haig

statements in an administrative proceeding are within the ambit of absolute privilege is decided on a case-by-case basis and turns on the nature of the public function of the proceeding and *the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements*'' (emphasis added)). Indeed, given that the *Kelley* factors do not represent an exhaustive list of considerations, there may well be additional considerations relevant in other circumstances.

Finally, in each case in which this court has evaluated whether a proceeding is quasi-judicial, we have explained that it is also ''important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides.'' (Internal quotation marks omitted.) *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 85; see, e.g., *Hopkins* v. *O'Connor*, supra, 282 Conn. 839; *Kelley* v. *Bonney*, supra, 221 Conn. 567. In considering the public policy rationale, we are mindful that ''[a]bsolute immunity . . . is strong medicine . . . .'' (Internal quotation marks omitted.) *Gallo* v. *Barile*, supra, 284 Conn. 471. In most cases, the policy considerations require balancing the public interest of encouraging public participation and candor, on the one hand, and the private interest of protecting individuals from false and malicious statements, on the other. Cf. id. (''whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests'' (internal quotation marks omitted)); *Rioux* v. *Barry*, 283 Conn. 338, 346, 927 A.2d 304 (2007) (same).

In sum, a quasi-judicial proceeding is one in which the entity conducting the proceeding has the power of discretion in applying the law to the facts within a framework that contains procedural protections against defamatory statements. As part of their inquiry into whether a proceeding is truly quasi-judicial, courts may consider the relevant factors enumerated by this court

Priore *v.* Haig

in *Kelley* to determine whether the entity exercises powers akin to a judicial entity. See *Kelley* v. *Bonney*, supra, 221 Conn. 567. Courts may also consider other factors that are relevant to a given proceeding, including the procedural safeguards of the proceeding and the authority of the entity to regulate the proceeding. Finally, courts must always carefully scrutinize whether there is a sound public policy justification for the application of absolute immunity in any particular context.

With this in mind, we turn to the facts of this case. It is well settled that, when acting on a special permit application, a town's planning and zoning commission acts in an administrative capacity. See, e.g., *A.P. & W. Holding Corp.* v. *Planning & Zoning Board*, 167 Conn. 182, 184–85, 355 A.2d 91 (1974). It is also well settled that, when acting in this administrative capacity on a special permit application, a planning and zoning commission has "discretion to determine *whether* the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the . . . commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the . . . commission can exercise its discretion during the review of the proposed special [permit], as it applies the regulations to the specific application before it." (Emphasis in original.) *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 628, 711 A.2d 675 (1998). Indeed, in the present case, the Greenwich Municipal Code requires the commission to exercise its discretion in deciding whether to approve the special permit application. See Greenwich Municipal Code § 6-17 (a) (2016) ("[c]ommission shall determine that the proposed use conforms with the overall intent of these regulations and the purposes of each zone"); id., § 6-17 (d) (commission "shall consider all the standards contained in [§] 6-15 (a)," and it "shall

consider" twelve enumerated attributes of proposed use in special permit application); id., § 6-17 (e) ("[c]ommission may require applicants for special permit to prepare and submit any additional data and studies as necessary to allow the [c]ommission to arrive at its determinations"). Accordingly, we conclude that the commission has the discretion to apply the law, in this case, zoning regulations, to the facts set forth in the application before it. This conclusion militates in favor of a determination that the hearing was quasi-judicial.

Turning to the *Kelley* factors, we note that the first two factors are encompassed in our discussion regarding the commission's powers of discretion to apply the law to the facts. See *Kelley* v. *Bonney*, supra, 221 Conn. 567 (first two *Kelley* factors are "whether the body has the power to . . . (1) exercise judgment and discretion . . . [and] (2) hear and determine or to ascertain facts and decide"). We agree with the Appellate Court's conclusion that the third and fourth factors—whether the commission was empowered to "make binding orders and judgments" and whether the commission had the power to "affect the personal or property rights of private persons"; id.—also weigh in favor of a determination that the hearing was quasi-judicial. *Priore* v. *Haig*, supra, 196 Conn. App. 701–702. The relevant statutes and regulations authorize the commission to approve, deny, or table decision on the plaintiff's application. Thus, the commission is empowered to make binding orders. Moreover, we have explained that "[z]oning regulations . . . are in derogation of [common-law] property rights . . . ." *Planning & Zoning Commission* v. *Gilbert*, 208 Conn. 696, 705, 546 A.2d 823 (1988). Therefore, whatever action the commission takes on a special permit application affects the property rights of the applicant or surrounding property owners. For example, if the commission denies a special permit

Priore *v.* Haig

application, it would restrict a property owner's ability to use his property in the manner he desires.

Significantly, however, the hearing before the commission had almost no procedural safeguards in place to ensure the reliability of the information presented at the proceeding. Unlike the proceedings in *Craig* and *Petyan*, there is no requirement that a declarant before the commission make her statements under oath or otherwise certify that the information is true and correct.[4] See *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 87; *Petyan* v. *Ellis*, supra, 200 Conn. 250; cf. *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264, 597 A.2d 807 (1991) ("[although] no civil remedies can guard against lies, the oath and the fear of being charged with perjury are adequate to warrant an absolute privilege for a witness' statements"). "The fact that statements [made during a planning and zoning commission hearing] are not under oath occasionally results in knowingly false statements which may affect the application." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 20:11, p. 611. There is also no practical opportunity to meaningfully challenge the veracity of a statement made by a member of the

---

[4] Indeed, speakers at a planning and zoning commission public hearing are not witnesses in the traditional sense. Our case law typically recognizes that it is "*parties* to or *witnesses* before judicial or quasi-judicial proceedings [who] are entitled to absolute immunity for the content of statements made therein." (Emphasis added; internal quotation marks omitted.) *Preston* v. *O'Rourke*, 74 Conn. App. 301, 311, 811 A.2d 753 (2002). This is logical because "[a] witness' reliability is ensured by his [or her] oath, the hazard of cross-examination and the threat of prosecution for perjury." *Bruce* v. *Byrne-Stevens & Associates Engineers, Inc.*, 113 Wn. 2d 123, 126, 776 P.2d 666 (1989); see, e.g., *Briscoe* v. *LaHue*, 460 U.S. 325, 333–34, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983) ("the [truth-finding] process is better served if the witness' testimony is submitted to the crucible of the judicial process so that the [fact finder] may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies" (internal quotation marks omitted)). There are often no such constraints on a speaker before a planning and zoning commission to ensure the truthfulness of her statements.

Priore *v.* Haig

public.[5] Cf. id., § 20:3, p. 593 (public hearing before municipal administrative agency is not required to follow rules of evidence). Additionally, there is no remedy available to the commission during a hearing with respect to a witness who gives knowingly false information, such as a charge of perjury, as there is to a judge during a judicial proceeding. See, e.g., *Stega* v. *New York Downtown Hospital*, 31 N.Y.3d 661, 671, 107 N.E.3d 543, 82 N.Y.S.3d 323 (2018) ("[F]or absolute immunity to apply in a quasi-judicial context, the process must make available a mechanism for the party alleging defamation to challenge the allegedly false and defamatory statements. . . . [A]ny 'character assassination' that occurs in a judicial proceeding is at least in principle subject to charges of perjury."). The lack of procedural safeguards weighs heavily against a conclusion that the hearing was quasi-judicial. For these reasons, we also conclude that the commission did not have the power to "examine witnesses and [to] hear the litigation of the issues," in the traditional sense, as contemplated by the fifth *Kelley* factor. *Kelley* v. *Bonney*, supra, 221 Conn. 567.

Moreover, with respect to the authority of the entity to regulate the proceeding, the commission does not have discretion to reject the admission of evidence or testimony that is submitted, it cannot strike information from the record, and it does not have the power to subpoena witnesses. See, e.g., 9 R. Fuller, supra, § 21:5, p. 646 (In a proceeding before a land use agency, "[t]here is no effective mechanism for excluding evidence based [on] the considerations that apply to court

---

[5] We recognize that applicants before a planning and zoning commission may have limited opportunities to assert that a witness' statements are false. For example, following a comment made by a member of the public, an applicant could assert that the speaker was not being truthful. We conclude that this limited opportunity is not sufficient to appropriately protect either the private interest in minimizing the occurrence of defamatory statements or the public interest in ensuring reliable public participation.

Priore *v.* Haig

proceedings. Evidence presented will not be excluded based on claims that it is not relevant, not the best evidence or that it amounts to hearsay.''). Rather, sorting through potentially false or misleading public comments is left, informally, to commission members who may be ''experienced in considering statements made by opponents, know[ing] their bias and the nature of their interest in the proceeding . . . .'' Id., § 20:12, p. 616. Furthermore, administrative agencies, such as planning and zoning commissions, ''may consider evidence which would normally be incompetent in a judicial proceeding, as long as the evidence is reliable and probative.'' Id., § 20:11, p. 612. Indeed, there are no rules of evidence applicable during a hearing on a special permit application. See, e.g., id., § 20:3, p. 593 (''Public hearings before a municipal administrative agency are not required to follow the same procedures required for trial of a civil action in court. Proceedings are informal and conducted without following rules of evidence applying to court proceedings.''); see also, e.g., id., § 20:11, p. 611 (''[m]unicipal land use hearings in Connecticut do not follow the rules of discovery and evidence used in court proceedings''). In short, the commission has limited authority to ensure the reliability of information received during the hearing and has no authority to hold speakers accountable for statements made during the hearing. This conclusion also weighs against a determination that the hearing was quasi-judicial.

Turning to the public policy considerations, we acknowledge the Appellate Court's concern that a conclusion that the hearing was not quasi-judicial may serve as a disincentive to citizen participation in local governments by chilling free speech. *Priore* v. *Haig*, supra, 196 Conn. App. 705. ''The rationale for extending the absolute [immunity] to statements made during quasi-judicial proceedings rests in the public policy that every

Priore *v.* Haig

citizen should have the unqualified right to appeal to governmental agencies for redress without the fear of being called to answer in damages . . . .'' 50 Am. Jur. 2d, supra, § 283, pp. 666–67. The importance of ensuring public participation cannot be overstated. This public policy consideration, however, must be considered along with the private interest of protecting individuals from false and malicious statements. Cf. *Rioux* v. *Barry*, supra, 283 Conn. 346 (''the public interest of encouraging complaining witnesses to come forward must be balanced against the private interest of protecting individuals from false and malicious claims''). This is particularly important when, as we explained, the proceeding has minimal procedural safeguards in place to ensure the reliability of the information presented at the proceeding. After all, ''[t]he absolute [immunity] for communications in the context of quasi-judicial proceedings is intended to protect the integrity of the process and [*to*] *ensure that the quasi-judicial decision-making body gets the information it needs*.'' (Emphasis added.) 50 Am. Jur. 2d, supra, § 283, p. 667. In other words, the purpose of promoting citizen participation is, in large part, to ensure that the decision-making entity obtains accurate information to reach the correct result.

Moreover, the concern that declining to extend absolute immunity to statements made in these proceedings would discourage public participation is ameliorated, in some respects, by our state's statutory protection against a ''strategic lawsuit against public participation,'' also known as a SLAPP lawsuit.[6] See General

---

[6] ''SLAPP is an acronym for strategic lawsuit against public participation, the distinctive elements of [which] are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. . . . The purpose of a SLAPP [lawsuit] is to punish and intimidate citizens who petition state agencies and have the ultimate effect of chilling any such action.'' (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,       U.S.      , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

Priore *v.* Haig

Statutes § 52-196a. Under this statutory scheme, a party may file a special motion to dismiss when the opposing party's complaint is based on the moving party's exercise of, among other things, the right of free speech or the right to petition the government in connection with a matter of public concern. See General Statutes § 52-196a (b); see also General Statutes § 52-196a (e) (3) (describing circumstances under which trial court must grant party's special motion to dismiss). Although the statutory protection against SLAPP lawsuits does not create a substantive right, the procedural mechanism that § 52-196a establishes, namely, the special motion to dismiss, provides a moving party with the opportunity to have the lawsuit dismissed early in the proceeding and stays all discovery, pending the trial court's resolution of the special motion to dismiss. See General Statutes § 52-196a (d). If the court grants the special motion to dismiss, the moving party is also entitled to costs and reasonable attorney's fees. See General Statutes § 52-196a (f) (1). Thus, speakers at a public hearing before a planning and zoning commission are afforded a procedural vehicle to more quickly vindicate their right to freely participate in planning and zoning commission public hearings in the event that they are subjected to unwarranted litigation seeking to silence their exercise of free speech. Indeed, the legislative history of § 52-196a indicates that the legislature contemplated that this statutory scheme would apply in precisely this type of situation to ensure speech was not chilled.[7] During the debate on the bill, the bill's

---

[7] We note that subsection (h) (6) of § 52-196a contains a list of instances in which the statute does not apply, including "to a common law or statutory claim for bodily injury or wrongful death, except the exclusion provided in this subdivision shall not apply to claims for (A) emotional distress unrelated to bodily injury or wrongful death or conjoined with a cause of action other than for bodily injury or wrongful death, or (B) *defamation, libel or slander.*" (Emphasis added.)

Representative William Tong explained that "the purpose of the statute and the way that it operates is to provide that a plaintiff can dismiss a claim—let's just say for defamation—because they're exercising their constitutional

Priore *v.* Haig

sponsor, Representative William Tong, explained that one situation in which the statute would apply is when "somebody speaks out often on a zoning issue about a development. They're a private citizen and they oppose a development for example and the developer has comparatively more resources to try to shut down that opposition and they do so by filing a defamation claim. It's sort of [a] textbook definition of what is colloquially known as a [libel] bully and they'll go and . . . initiate litigation to try to spend down the defendant and try to use the litigation process to pressure [the defendant] into standing down. That's the other situation in which we see this." 60 H.R. Proc., Pt. 16, 2017 Sess., pp. 6900–6901; see also 60 S. Proc., Pt. 6, 2017 Sess., pp. 2236–37, remarks of Senator John A. Kissel (explaining reasons for statute, including instances in which "certain folks, developers, if you went to a planning and zoning meeting and spoke against the development, that developer would slap a lawsuit on you and therefore [would be] chilling the public debate on developments . . . . So, what this legislation does is it creates a special mechanism to try to get these [lawsuits] taken out and dismissed as early as possible."); id., p. 2237, remarks of Senator Kissel ("this is a really good mechanism to help free flow of ideas so that folks aren't intimidated, [such as when] . . . someone with a lot of money . . . wants to develop property").

---

right to free speech. With that [having been] said, we wanted to make sure that this couldn't—that this special motion to dismiss could not otherwise be contorted to be used to dismiss a valid claim of a plaintiff for bodily injury, so a plaintiff shows up and files an action for wrongful death, bodily injury based on environmental pollution for example. You wouldn't want the defendant who might otherwise be guilty of that claim to be able to move to dismiss that claim for bodily injury. With that [having been] said, what we want to make sure is that if there is a counterclaim against the original plaintiff for defamation, [libel], or slander that that person could still use this motion to dismiss [or] . . . the [counterclaim], which is impairing that person's right to speak on initial public concern like for example environmental pollution." 60 H.R. Proc., Pt. 16, 2017 Sess., pp. 6950–51.

Priore *v.* Haig

Given the absence of procedural safeguards to ensure the reliability of a proceeding before a planning and zoning commission, the public benefit to be derived from statements made by the public during a special permit application hearing before such a commission is not sufficiently compelling to outweigh the possible damage that untruthful statements may cause to individual reputations to warrant granting absolute immunity to such statements. See, e.g., *Burns* v. *Davis*, 196 Ariz. 155, 161, 993 P.2d 1119 (App. 1999) (board of adjustment proceeding was not quasi-judicial because "public policy dictates that [the] need to ensure complete and truthful testimony must be balanced against extending protection to administrative hearings in which a volunteer may defame someone under the guise of protecting the public" (internal quotation marks omitted)), review denied, Arizona Supreme Court, Docket No. CV-99-0365-PR (February 8, 2000). Thus, in balancing the competing policy interests, we conclude that public policy considerations militate against a conclusion that the hearing was quasi-judicial.

In light of the foregoing, we recognize that the commission has discretion to apply the law to the facts of the application before it and that certain *Kelley* factors weigh in favor of a determination that the hearing was quasi-judicial. Nevertheless, the lack of procedural safeguards, the limited authority of the commission to reject evidence or otherwise limit what information is brought before it to ensure the reliability of the proceeding, and the lack of a public policy rationale for extending the "strong medicine" of absolute immunity in this context lead us to conclude that a public hearing on a special permit application before a town's planning and zoning commission is not quasi-judicial.[8]

[8] Because we conclude that the hearing was not quasi-judicial, we need not address the plaintiff's contention that the defendant's statements were not relevant to the hearing.

Priore *v.* Haig

Other jurisdictions have similarly concluded that proceedings before a planning and zoning commission are not quasi-judicial. For example, under circumstances similar to the present case, the Supreme Court of Nevada recently concluded that the plaintiff's neighbor was not entitled to absolute immunity for statements made during the public comment period of a planning commission meeting. *Spencer* v. *Klementi*, supra, 136 Nev. 325. The court reasoned that, "[d]uring the [public comment] period of . . . meetings [before a board and a planning commission], the public is invited to speak about relevant community issues. Although both proceedings provided parties the opportunity to present personal testimony during this period, neither required an oath or affirmation. Further, although [the speakers] were allowed to speak freely during the [public comment] periods, neither was subject to cross-examination or impeachment. Because these [public comment] periods lacked the basic [due process] protections we would expect to find in a court of law, they were not quasi-judicial in nature." Id., 332. The court went on to explain that "[e]xtending the [judicial proceedings] privilege to such statements thus does not comport with the privilege's policy to promote the [truth-finding] process in a judicial proceeding. . . . Based on our conclusion that the [public comment] periods . . . lacked basic [due process] protections, we conclude that public policy considerations do not weigh in favor of applying the [judicial proceedings] privilege . . . ." (Citation omitted; internal quotation marks omitted.) Id., 333.

The New Hampshire Supreme Court has also concluded that proceedings before a zoning board are not quasi-judicial. The court reasoned that "[z]oning boards and commissions are created by the legislature as a part of an administrative organization designed to effect flexible application of zoning rules, regulations and restrictions. They are delegated administrative power

Priore *v.* Haig

with respect to permits, variances and nonconforming uses in order to provide a forum to individual property owners and others to voice the pro and con of zoning law, its application and administration. . . . Still, many elements of a true judicial proceeding [that] afford safeguards to the participants therein are not made a part of the required procedure at hearings held before such boards and commissions. . . .

"We find meager support for [the speaker's] contention that her remarks made before the zoning board of adjustment were entitled to the protection of an absolute privilege. . . . Nor do we feel that the public or private interests sought to be effectuated by public hearings held prior to the allowance or refusal of a petition for a variance dictate that such total immunity should obtain. The occasion determines the existence and scope of the privilege, if any . . . and the availability of an absolute privilege must be reserved for those situations [in which] the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a [speaker's] motives." (Citations omitted.) *Supry* v. *Bolduc*, 112 N.H. 274, 275–76, 293 A.2d 767 (1972). We find the rationale of our sister state courts persuasive.

Accordingly, having concluded that a hearing on a special permit application before a town's planning and zoning commission is not quasi-judicial in nature, we also conclude that the Appellate Court incorrectly determined that the defendant's statements were entitled to absolute immunity. Thus, the Appellate Court improperly affirmed the judgment of the trial court dismissing the plaintiff's action for lack of subject matter jurisdiction.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and to remand the

Priore *v.* Haig

case to the trial court for further proceedings according to law.

In this opinion MULLINS, KAHN and KELLER, Js., concurred.


D'AURIA, J., with whom ROBINSON, C. J., and ECKER, J., join, concurring in part and concurring in the judgment. I agree with the majority that the defendant in the present case, Stephanie Haig, has not established that the public hearing on the special permit application submitted by the plaintiff, Thomas Priore, before the Planning and Zoning Commission of the Town of Greenwich (commission) was a quasi-judicial hearing. Like the majority, I therefore conclude that she has not demonstrated that her statements before that commission are entitled to absolute immunity under the litigation privilege. I write separately, however, for two reasons.

First, although I agree with the majority's ultimate holding, I do not agree with certain aspects of its analysis. In short, I believe that the majority (1) understates the benefit of the plaintiff, an applicant before the commission, within that very same forum, being able to refute any false statements made about him at the public hearing, (2) overemphasizes the need for "due process" safeguards within that forum, and (3) overstates protections afforded to the defendant by Connecticut's "strategic lawsuits against public participation" (anti-SLAPP) statute, General Statutes § 52-196a. Second, the defendant's statements might be covered by an absolute immunity of a different strain. Specifically, although there are no clear precedents in this state, I believe that a public hearing on a special permit application before a town's planning and zoning commission may constitute a legislative proceeding, and, as such, comments made during and relevant to such a proceeding may be entitled to absolute immunity. Because that

Priore *v.* Haig

issue has not been raised either in the trial court or in this court, however, that is an issue for another day.

I

The majority supports its conclusion that the public hearing on the plaintiff's special permit application was not a quasi-judicial proceeding in part by its description of the plaintiff's ability to refute the defendant's statement before the commission as a "limited opportunity . . . ." Although I conclude that this opportunity is not a sufficient procedural safeguard to assist the defendant in demonstrating that the commission undertakes a quasi-judicial function, I believe that the majority understates this opportunity.

Proceedings before such local agencies are not known for formality. The defendant made her statement during a period devoted to public comment on the plaintiff's application to, among other things, relocate a sewer line that ran through his property and serviced a number of "up-line users." A number of people, including the defendant, spoke against the application because of how it would affect trees in the neighborhood. The majority notes that the "record is silent on whether the plaintiff attended the hearing." If he chose to attend, the plaintiff undoubtedly could have responded to the defendant's allegation that he had a "serious criminal past," including that he had "paid [more than] $40 million in fines to the [Securities and Exchange Commission]." (Internal quotation marks omitted.) In fact, the plaintiff's engineer, Anthony D'Andrea, who did attend the hearing, responded to a number of assertions made by those who opposed the application. And, even if the plaintiff was not at the hearing, there does not appear to be anything that would have prevented him from correcting the record after the hearing. In fact, we know, as the majority observes, that the commission "adjourned the hearing and tabl[ed] the decision on

Priore *v.* Haig

whether to approve the application until the plaintiff
or his representatives provided it with the clarifications
and information that it had requested.'' (Internal quota-
tion marks omitted.) Surely, with that requested infor-
mation, the plaintiff could have, if he wished, provided
the commission with information explaining that the
defendant's statement was false. Specifically, he could
have informed the commission, as he informed the trial
court in his memorandum of law in support of his
motion to strike the defendant's special defenses, that,
in an action entitled *Securities & Exchange Commis-
sion* v. *ICP Asset Management, LLC*, United States
District Court, Docket No. 10 Civ. 4791 (LAK) (S.D.N.Y.
September 6, 2012), he personally was assessed only a
''modest'' civil fine of approximately \$487,000.[1]

Although it cannot be disputed that it was not the
commission's responsibility, or perhaps not within its
jurisdiction, to adjudicate the truthfulness of the defen-
dant's statement about the plaintiff's supposed criminal

---

[1] In support of his memorandum of law in support of his motion to strike,
the plaintiff attached as an exhibit the final judgment in *Securities &
Exchange Commission* v. *ICP Asset Management, LLC*, supra, United States
District Court, Docket No. 10 Civ. 4791 (LAK). He also provided this exhibit
in the appendix to his brief to this court. Pursuant to that judgment, the
plaintiff was found liable for disgorgement in the amount of \$797,337, pre-
judgment interest in the amount of \$215,045, and a civil penalty in the
amount of \$487,618, for a total amount due of \$1,500,000. As to the other
defendants in that federal securities case, the final judgment held ICP Asset
Management, LLC, and Institutional Credit Partners, LLC, liable, jointly and
severally, for disgorgement in the amount of \$13,916,005 and prejudgment
interest of \$3,709,028; held ICP Asset Management, LLC, liable for a civil
penalty in the amount of \$650,000; and held ICP Securities, LLC, liable for
disgorgement in the amount of \$1,637,581, prejudgment interest in the
amount of \$301,893, and a civil penalty in the amount of \$1,939,474. In total,
the final judgment required the defendants to pay \$23,653,981. The plaintiff
in the present case, Priore, consented to the entry of this final judgment
on behalf of himself and on behalf of all other defendants as president/
CEO of those companies. This consent judgment was specifically limited
to resolving civil liability. This court is not aware, however, of any criminal
action brought in relation to this case.

Priore *v.* Haig

past, this "limited opportunity" for the plaintiff to respond could have helped ensure the accuracy of the information placed before the commission in two ways: (1) The plaintiff, who had the greatest interest in making sure that the commission received accurate information to reach the right result on his application, could have corrected the record, and (2) once the plaintiff disputed or refuted the statement, the agency could have investigated the veracity of the statement at issue if it considered it important to a determination of the plaintiff's special permit application.

The majority disregards the benefit of this opportunity, I believe in large part, because of its overreliance on what it labels the lack of adequate "due process" safeguards before the commission. I agree that procedural safeguards are necessary to promote the reliability of the result before the commission, but the kind of due process rights contemplated by the majority is not implicated in the present case. The majority appears to contend that, for a planning and zoning commission proceeding to be eligible for quasi-judicial status, when a witness makes a statement before that commission, there must be sufficient procedural safeguards to give the plaintiff an opportunity not only to rebut the statement but for the agency to determine the statement's veracity so as to protect the plaintiff's reputation—in essence, a name-clearing hearing. The plaintiff, however, has no due process right to a determination of the accuracy of the statement of a witness who was not a state actor before a planning and zoning commission.

More is required to establish a due process violation than a simple claim of defamation: "[When] a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. . . . [T]he remedy mandated by the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment is an opportunity to refute

the charge. . . . The purpose of such notice and hearing is to provide the person an opportunity to clear his name . . . .'' (Citation omitted; internal quotation marks omitted.) *Hunt* v. *Prior*, 236 Conn. 421, 441, 673 A.2d 514 (1996). ''However, under *Paul* v. *Davis*, [424 U.S. 693, 710–12, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)], government acts defaming an individual implicate a liberty interest only [when] the individual suffers a related alteration of his legal status or deprivation of a right recognized under state law.'' *Hunt* v. *Prior*, supra, 441; see also *Singhaviroj* v. *Board of Education*, 301 Conn. 1, 6 n.5, 17 A.3d 1013 (2011) (''[s]uch an action is referred to as a stigma-plus claim; it involves an injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process'' (internal quotation marks omitted)).

In the present case, there is no allegation that the government did anything to the plaintiff to place his ''good name, reputation, honor, or integrity . . . at stake . . . .'' (Internal quotation marks omitted.) *Hunt* v. *Prior*, supra, 236 Conn. 441. The commission is not even a party to the case. Rather, the plaintiff complains that the defendant, a member of the public and not a government actor, referred to his '' 'criminal past' '' at a public meeting. Even putting aside that there is no state action involved, to make out a due process claim, not only would the plaintiff have to demonstrate that he was injured in some way beyond being defamed (i.e., a stigma), but he also would have to demonstrate the deprivation of some tangible interest or property right (i.e., a plus). In the present case, the plaintiff alleges only that the defendant made the allegedly false statement ''intentionally . . . to cause damage to [his] reputation'' and that this statement did in fact ''cause reputational damage . . . in his profession . . . .'' Although it is true that ''a liberty interest is implicated

when a plaintiff can show both harm to his reputation and serious damage to his prospects for future employment in his profession''; (internal quotation marks omitted) *Hunt* v. *Prior*, supra, 441; the plaintiff in the present case merely alleges harm to his professional reputation, not any ''serious damage to his prospects for future employment in his profession . . . .'' (Internal quotation marks omitted.) Id. Even if these allegations were sufficient to establish a stigma-plus claim, the plaintiff alleges harm to his professional reputation only as part of his damages; he does not assert a due process claim. Thus, although I agree with the majority that we must consider procedural safeguards when determining whether a proceeding is quasi-judicial, the majority's reliance on due process principles erroneously heightens the defendant's burden in establishing immunity from suit because the plaintiff has not alleged harm by a state actor or asserted a stigma-plus claim.

Finally, I also believe that the majority overstates the protections afforded to the defendant by our anti-SLAPP statute. The majority contends that § 52-196a ''appl[ies] in precisely this type of situation to ensure speech [is] not chilled.'' In my view, § 52-196a does little to protect the defendant's first amendment rights, as it does not provide the defendant with any new or additional substantive rights. Compare *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 696, 189 A.3d 79 (2018) (''when the legislature intends to confer immunity from liability or from suit, it does so in distinctive and unmistakable terms''), with General Statutes § 52-196a. Rather, the statute merely creates a procedure by which the defendant may have her first amendment defense considered in an expedited fashion, as early as possible in the litigation, before the defendant is burdened by the cost of discovery. See General Statutes § 52-196a (b). It still requires litigation, albeit expedited, to determine

Priore *v.* Haig

whether the first amendment protects the defendant's statements. See General Statutes § 52-196a (e) (1). Moreover, the special motion to dismiss permitted under § 52-196a is easily defeated under a probable cause standard. See General Statutes § 52-196a (e) (3). Thus, in my view, the anti-SLAPP statute does little to ameliorate the concern that lawsuits such as this one, brought against defendants for statements made in these proceedings, will discourage public participation before an agency such as the commission.

II

If a public hearing on a special permit application before a town's planning and zoning commission is not quasi-judicial, and I agree with the majority that the defendant has not established that it is, it may nonetheless very well constitute a legislative proceeding. Although Connecticut appellate courts have not addressed this issue, other jurisdictions have held that witnesses in a legislative proceeding are entitled to absolute immunity. These jurisdictions have applied different approaches to arrive at this conclusion.

For example, some state courts have held that, under their common law, the litigation privilege extends to both quasi-judicial and legislative proceedings so that witness comments made in a legislative proceeding are entitled to absolute immunity. See, e.g., *In re IBP Confidential Business Documents Litigation*, 755 F.2d 1300, 1310–11 (8th Cir. 1985) (granting defendant absolute immunity for statements made in letter submitted to congressional subcommittee, explaining that, under common law of New York and Tennessee, "[a] witness actually testifying before a legislative committee, like a witness testifying in court, enjoys absolute immunity from liability for defamation for statements made that are pertinent to the subject of inquiry or responsive to questions asked"); *Fiore* v. *Rogero*, 144 So. 2d 99, 102

Priore *v.* Haig

(Fla. App. 1962) (one who testifies before legislative body or committee is "generally subject to the same rules of privilege accorded similar testimony in judicial proceedings"); *Erickson* v. *Marsh & McLennan Co.*, 117 N.J. 539, 563, 569 A.2d 793 (1990) ("[a] statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability").

Other courts have held that the litigation privilege extends to witness statements made in a legislative proceeding because their state follows the Restatement (Second) of Torts. See, e.g., *Beverly Enterprises*, *Inc.* v. *Trump*, 1 F. Supp. 2d 489, 493 (W.D. Pa. 1998) (The defendant was entitled to absolute immunity for unsworn statements she made at a town hall meeting because "Pennsylvania has adopted section 590A of the Restatement (Second) of Torts as its common law. . . . That section provides, 'A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding.' . . . This testimonial immunity is absolute and similar in all respects to that afforded a witness in a judicial proceeding." (Citations omitted.)), aff'd, 182 F.3d 183 (3d Cir. 1999), cert. denied, 528 U.S. 1078, 120 S. Ct. 795, 145 L. Ed. 2d 670 (2000); *Burns* v. *Davis*, 196 Ariz. 155, 162, 993 P.2d 1119 (App. 1999) ("the Restatement [(Second) of Torts] extends absolute immunity in limited specified situations to judicial officers, attorneys at law, parties to judicial proceedings, witnesses in judicial proceedings, jurors, legislators, [and] witnesses in legislative proceedings"), review denied, Arizona Supreme Court, Docket No. CV-99-0365-PR (February 8, 2000). The defendant, however, in the present case does not ask this court to extend our litigation privilege to statements made in and relevant to legislative proceedings; nor

Priore *v.* Haig

does she ask that this court adopt provisions of the Restatement (Second) of Torts.

Finally, another avenue by which state courts have granted absolute immunity to witness statements made in a legislative proceeding is by extending the scope of the legislative privilege. In Connecticut, this privilege applies to certain statements made by legislators in legislative proceedings. See, e.g., *Office of Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 563, 858 A.2d 709 (2004); *Traylor* v. *Gerratana*, 148 Conn. App. 605, 611–12, 88 A.3d 552, cert. denied, 312 Conn. 901, 91 A.3d 908, and cert. denied, 312 Conn. 902, 112 A.3d 778, cert. denied, 574 U.S. 978, 135 S. Ct. 444, 190 L. Ed. 2d 336 (2014). Other state courts have held that this privilege extends to witnesses, not just the legislators. See, e.g., *Arlington Heights National Bank* v. *Arlington Heights Federal Savings & Loan Assn.*, 37 Ill. 2d 546, 549, 229 N.E.2d 514 (1967) ("Traditionally, the members of legislative and judicial bodies have been accorded absolute privilege in the performance of their official acts and duties . . . and it is clear that an individual citizen is similarly privileged to some extent in his appearances and actions before these bodies." (Citations omitted.)). If a witness enjoys absolute immunity for statements made before a committee of the legislature, I would have trouble distinguishing the defendant in the present case from any other legislative witness, as she petitioned her local government to consider information that, in her view, was important when acting on the plaintiff's special permit application. See *Beverly Enterprises, Inc.* v. *Trump*, supra, 1 F. Supp. 2d 493 ("[A] legislative proceeding [is not] limited to an official hearing called by a legislative body, or by duly formed committees of that body, where witnesses are compelled to appear and testify under oath. . . . [T]he definition of a legislative proceeding is broad enough to encompass proceedings—including informal

fact-finding, information gathering, or investigative activities—that are conducted by legislators with the objective purpose of aiding the legislators in the drafting, debating, or adopting of proposed legislation." (Citations omitted.)); *J. D. Construction Corp.* v. *Isaacs*, 51 N.J. 263, 271, 239 A.2d 657 (1968) (absolute immunity may be accorded statements made before municipal governing body hearing zoning appeal depending "on individual circumstances and the . . . pertinency and relevancy of remarks or contentions to the questions legitimately before the governing body"). The defendant, however, has not claimed that the legislative privilege applies in the present case.

Thus, it remains an issue for this court to decide, another day, whether a public hearing on a special permit application before a town's planning and zoning commission constitutes a legislative proceeding and, if so, whether absolute immunity applies to public statements made at such a proceeding.

Accordingly, I concur in part.

———————————————